UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NIGIL DOWDELL, | * | CIVIL ACTION NO. 19-CV-11410 |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | JUDGE SUSIE MORGAN |
| | * | |
| CULPEPPER & ASSOCIATES SECURITY, INC. | * | |
| | * | |
| Defendant. | * | MAGISTRATE JUDGE KAREN |
| | * | WELLS ROBY |

**********************************************

## <u>JOINT PRETRIAL ORDER</u>

NOW INTO COURT, through undersigned counsel, come Plaintiff, Nigil Dowdell, and

Defendant, Culpepper & Associates, Security, Inc., the following Joint Pretrial Order, pursuant ot

the Court's Order (R. Doc.13 & 49).

**I.      DATE OF PRE-TRIAL CONFERENCE**

The final pre-trial conference is scheduled for September 1, 2020 at 10:00 a.m.

**II.     APPEARANCE OF COUNSEL/PARTIES REPRESENTED**

Amanda J. Butler (T.A.) (LSBA # 31644)
abutler@lawgroup.biz
Susanne Cooper (LSBA #27361)
scooper@lawgroup.biz
700 Camp St., Ste. 405
New Orleans, LA 70130
Telephone: (504) 528-9500
Facsimile: (504) 754-7776
**COUNSEL FOR PLAINTIFF,**
**NIGIL DOWDELL**

Susan Fahey Desmond (T.A.) (LSBA # 25380)
Susan.Desmond@jacksonlewis.com
Amanda Wingfield Goldman (LSBA #30800)

Amanda.Goldman@jacksonlewis.com
650 Poydras Street, Suite 1900
New Orleans, LA 70130
Telephone:    (504) 208-1755
Facsimile:    (504) 208-1759
**COUNSEL FOR DEFENDANT**
**CULPEPPER & ASSOCIATES SECURITY SERVICES, INC.**

III.   **PARTIES**

Plaintiff, Nigil Dowdell, is a person of the full age of majority and resident and domiciliary of Orleans Parish, State of Louisiana.  The Defendant Culpepper & Associates Security, Inc. ("CASS") operates a security firm which provides security officers for corporate and government sectors, including the Veterans Affairs Hospital in New Orleans, Louisiana.  CASS is a citizen of Georgia.

IV.   **JURISDICTION**

Jurisdiction lies with this Court under 28 U.S.C. § 1331 based on Plaintiff's claims of sexual harassment and retaliation under Title VII, 42 U.S.C. 2001e *et seq*.

V.   **PENDING AND ANTICIPATED MOTIONS**

The following Motions are currently pending:  Defendant's Motion for Summary Judgment (Docket 52), Defendant's Motion to Strike Plaintiff's Inadmissible and Sham Summary Judgment Evidence; (Docket 63), Defendant's Motion *in Limine* (Docket 56), Plaintiff's Motion to allow video testimony of Brasuan Thompson at trial. (Docket 82). The parties anticipate that they will file motions in *limine* in accordance with the Scheduling Order.

VI.   **BRIEF SUMMARY OF THE MATERIAL FACTS CLAIMED BY:**

**(a)** **Plaintiff:**

Ms. Dowdell, a mother of two children (2 and 10 years at the time), was hired as a security officer for CASS on March 29, 2018.  Nigil's husband is a merchant marine and is frequently out of the country for 2-4 months at a time. During the job interview, Ms. Dowdell informed CASS that she could not work overnight shifts when her husband was working and was hired despite her inability to work overnights when her husband was working.  Mr. Labeaud, one of Nigil's shift supervisors and an occasional scheduler, also knew about Nigil's inability to work overnight shifts when her husband was out of town.  Consequently, Ms. Dowdell was scheduled to work during the day, either from 7:00 a.m. to 7:00 pm. or any time between 7:00 a.m. and 11:00 p.m.

In late April, Ms. Dowdell was asked by shift supervisor Robert Body whether she could cover some overnight shifts for a security offer who was out and Plaintiff did but her regular schedule remained during the day.  In mid-June 2018, CASS prepared a schedule that was supposed to stay in place for the remainder of the year, according to which Ms. Dowdell worked Sunday to Tuesday from 7:00 a.m. to 7:00 p.m. and Wednesday from 7:00 a.m. to 1:00 p.m..

On June 5, 2018, Ms. Dowdell was at the Transitional Living/Rehabilitation ("TLR") post with her fellow officer, Jonathan Doucette. They were both going to attend a 4:00 p.m. employee meeting as soon as the shift supervisor came to relieve them. The shift supervisor that night was Mr. Assad.  During the shift exchange on June 5, 2018, Mr. Assad rubbed his hand in between Ms. Dowdell's legs, and grabbed the inside of her upper left thigh, close to her vagina. At the same time, he said to her "Hey my girl, what's up muscles?" Then he walked away and went into the nearby men's restroom.  When he returned from the bathroom, Mr. Assad walked back to the post and said to Ms. Dowdell, "You're cheating on me, huh?"  Ms. Dowdell was in shock after this. She testified that she has never been touched like this by anyone with whom she was not intimate

and felt very violated.  Ms. Dowdell got extremely upset and was crying while walking down the hallway with Mr. Doucette, who advised her to report the sexual assault.

Ms. Dowdell prayed about it and spoke to her parents about the sexual assault and they also encouraged her to report the incident of sexual harassment to Ms. Herbert despite her fear of retaliation.  When she reported the assault to Ms. Herbert, Ms. Herbert told Ms. Dowdell, "I think I know who it is, but go ahead and tell me what happens" telling Ms. Dowdell that she suspected it was Mr. Assad.  Ms. Herbert called Mr. Culpepper in speakerphone and told him that Ms. Dowdell is reporting that she was sexually assaulted by Mr. Assad and that this is the second incident.  Mr. Culpepper decided to terminate Mr. Assad's employment.

After Ms. Dowdell described the sexual assault by Mr. Assad, Ms. Herbert told her that Assad also assaulted Ms. Thompson, but that Thompson had "not come forward." Ms. Herbert was friends with Mr. Assad and worked with him prior to CASS.  Ms. Herbert testified that she did not believe that Mr. Assad sexually assaulted Ms. Dowdell.

Unbeknown to Ms. Dowdell, officer Thompson was sexually harassed by Mr. Assad in March 2018 and had reported it to Ms. Hebert and Mr. Culpepper. However, nothing was done in response to Ms. Thompson's complaint, presumably because Ms. Hebert also did not believe Thompson's allegations against Mr. Assad.

After the sexual assault, Ms. Dowdell regularly broke down in tears at work and had to run to the bathroom to compose herself, as witnessed by co-workers.  At home, Ms. Dowdell did not want her husband touching her and she asked him to sleep on the couch.  Ms. Dowdell developed a fear of men and was afraid to be at the VA after the patients and most workers left for the day. She was afraid that Mr. Assad was upset at her because he lost his job and, upon her information

and belief did not get a job with the VA hospital police that he had applied for.  Assad was a patient at the VA.

In mid-June 2018, Ms. Dowdell told Mr. Labeaud that she was uncomfortable working any overnight shifts and at remote locations after what had occurred. Mr. Labeaud immediately telephoned the Site Manager, Freda Herbert, and turned on the speaker phone so that Ms. Dowdell could hear what was being said. Mr. Labeaud repeated Ms. Dowdell's concerns about being fearful and uncomfortable working overnight shifts or shifts in remote locations, and Ms. Herbert agreed with Labeaud not to schedule Ms. Dowdell for any such shifts.

For the week of July 1-7, 2018, Plaintiff was scheduled to work from 7:00 a.m. to 7:00 p.m. on July 1-3, 2018 and from 7:00 a.m.– 1:00 p.m. on July 4, 2018.  Contrary to CASS's assurances, on June 29, 2018 Labeaud sent out a revised schedule that added on overnight shift on July 5, 2018 to Ms. Dowdell's 40 hour work week. Ms. Dowdell immediately notified Mr. Labeaud via email, explaining that her husband would be out of town on July 5th and that she could not work overnight because she needed to stay home with her children.  Additionally, Ms. Dowdell called on July 5, 2018 more than 4 hours before her shift.  She was told that her call off cannot be accepted but she had no choice but to stay home with her children.

On July 6, 2018, CASS made yet another change to Ms. Dowdell's schedule by adding a 12 hour overnight shift on July 7, 2018 with 24 notice. The schedule showed that Ms. Dowdell had called off (C/O) for July 5, 2018.  On July 7, 2018, Ms. Dowdell made two attempts to call her shift supervisor Robert Body to call off and since he did not answer, she followed up with an email at 11:26 am informing him that she "will be unable to come in tonight due to personal reasons.  At 1:47 p.m. Herbert emailed Ms. Dowdell alleging that she no-showed on July 5, 2018

and complaining that they had to fill the position with another officer, which caused her overtime. Ms. Dowdell responded that "because of this situation" she asked not to be put on overnight shifts and that she felt those situations are unsafe for her. She also pointed out that she called in for both shifts (July 5th and 7th) six hours in advance and it would have been overtime for her too. Despite the fact that Ms. Dowdell reported the sexual assault less than four weeks before and informed Labeaud and Herbert of her fear of working overnight after the assault, Herbert claims to have been unaware of Ms. Dowdell's "situation" and points out the schedule is made to fit the client's needs.

CASS had an attendance policy that provided that employees who could not work a shift had to notify their supervisor a minimum of 4 hours prior to the shift. Excessive call offs would result in discipline. The policy distinguished call-offs from "no call/no shows" which were defined as not reporting to a scheduled shift without informing a supervisor. Two no call/no shows were considered job abandonment. Herbert describes the difference between a call off and "no call/no show" as "communication." She stated that "with the call-off, if you call off four hours in advance to let their supervisor know that you're not coming in for whatever reason, then you -- it's communication. You communicate, you notify the staff you are not able to come in." "A no call/no show is where you don't call. We don't hear from you at all." The company policy does not address blackout days for call-offs, the possibility that calls might not get accepted at times or that call-offs could be treated as no call/no shows under certain circumstances.

On July 7th, Culpepper emailed the schedule for the week of July 8, 2018. The only main deviation from the fixed schedule the company published on June 17, 2018 was that Ms. Dowdell's and officer High's schedules were flipped so that Ms. Dowdell was now scheduled to work from

7:00 p.m. to 7:00 a.m. overnight from July 8-11, 2018 at the CEP location.  Knowing that Plaintiff

was unable to work a single of the scheduled night shifts during the week starting July 8th, 2018,

Labeaud asked Ms. Dowdell to meet with Herbert on July 9, 2018.  During the meeting on July 9,

2018, Ms. Dowdell told Herbert that she called in on both my shifts, that Herbert knew her

"situation," she knew about the sexual assault with Assad, she knew Ms. Dowdell was

uncomfortable working overnight, and she knew that she didn't have child care because her

husband was not in town.  Herbert refused to hear Ms. Dowdell out and then told Ms. Dowdell to"

turn in her uniforms" and that she was *fired*.

**(b) Defendant**

CASS employed Dowdell as a security guard at the Veterans Affairs Hospital ("VA") in

New Orleans, Louisiana from March 29, 2018 until July 9, 2018.  CASS guards are not guaranteed

specific shifts, and the schedule is subject to change.  Dowdell indicated on her application with

CASS that she could work all shifts, including overnight.

CASS has a call off policy in its Handbook, which requires guards to call out at least four

hours in advance of their shift and speak directly to a supervisor.  During holiday periods, such as

Mardi Gras, Christmas, and Essence Fest, CASS issues directives to guards that no call offs will

be accepted, because many guards will call out, claiming to be sick.

On June 5, 2018, Dowdell complained to Herbert that a shift supervisor,[1] Ahmad Assad

("Assad"), touched her inappropriately while she was working at the Transitional Living Post in

the afternoon.[2]  CASS notified the VA, interviewed Dowdell and Assad, and terminated Assad's

---

[1] Assad is not a supervisor for purposes of a sexual harassment analysis.
[2] The report that Dowdell completed at the time of the incident states that Assad touched her on the inside of her left thigh and said, "what's up muscles?"  Dowdell's Complaint paints a considerably different picture by alleging that "Assad shov[ed] his hand between Dowdell's legs and groped her vagina."

employment the same day.  Assad is a veteran and patient of the VA, and the VA Police flagged Assad following this incident requiring that he be accompanied by a VA Police Officer at all VA appointments.

Two weeks after the incident, Dowdell worked three overnight shifts without incident.[3]  In anticipation of the Fourth of July holiday and Essence Fest, Labeaud emailed the guards on June 26, 2018 to inform them of the upcoming holiday schedule and that no call offs would be accepted. Dowdell emailed Labeaud that she could not work on July 5th and stated "[m]y son's father goes back to work on the 5th and nobody won't be in town yet to watch him."  She did not indicate that she had a fear of working overnight due to the incident with Assad, which occurred a month earlier. Labeaud encouraged Dowdell to fill out a switch form to find someone who would switch with her and informed her that the schedule could not be changed.  Dowdell did not fill out a switch form as directed and failed to find any guard to switch with her or otherwise work her shift. Because no call offs were accepted, her call off was converted to a no call/no show.

On July 6, 2018, Herbert circulated an amended schedule adding overnight shifts on July 7th and July 8th for Dowdell.  On July 7th, Dowdell emailed shift supervisor Robert Body that she would not come in for her shift that night due to "personal reasons." Body forwarded the email to Herbert.[4]  Both Herbert and Labeaud emailed Dowdell and emphasized that she needed to work her scheduled shifts because CASS was not accepting call offs.

---

[3] During her deposition, Dowdell claimed that she did not "remember" working these shifts, despite signing a sign-in sheet.

[4] Despite the fact that Dowdell tried to reach Body via telephone and was unsuccessful, Herbert did not deem this as a proper call off for two reasons: (1) Dowdell did not speak directly with a supervisor, and if she had trouble reaching Body, she should have phoned Labeaud or Herbert, and (2) they had indicated that they were not accepting call offs due to Essence Fest.

Dowdell replied to Herbert that "because of this situation" that she "asked not be put on overnight to other supervisors alone and the [sic] expressed it to you."  She continued that "due to the situation at hand" she would not show up for her shift that night.  Herbert responded that she was unaware of her "situation," that the schedule was made to fit the needs of the VA and could change at any time.  Despite these warnings, Dowdell did not work her shifts on July 7th and July 8th.  Dowdell made <u>no</u> attempt to contact anyone regarding her July 8th shift.

Dowdell met with Herbert and Labeaud on July 9th to discuss her failure to work her assigned shifts.  The parties dispute what occurred at this meeting and whether CASS terminated Dowdell's employment.  However, what is undisputed is that Dowdell did not work three scheduled shifts in a row, and CASS did not accept her attempts to call off the first two shifts (July 5th and July 7th).  Dowdell did not attempt to call off for her July 8th shift.

Dowdell filed an EEOC charge against CASS, wherein she only checked the box for retaliation.  In her narrative, she complained that CASS terminated her employment in retaliation for reporting a single incident of sexual harassment.  She included no allegations regarding the sexual harassment, a hostile work environment, nor any purported disability for which she needed an accommodation.  Dowdell claimed that Herbert changed her schedule and work location and terminated her employment in retaliation for reporting the single incident of sexual harassment.  Dowdell then filed suit against CASS, alleging sexual harassment, sex discrimination hostile work environment, retaliation and disability discrimination.

VII.    **UNCONTESTED MATERIAL FACTS**

1.      CASS employed Dowdell as a security guard at the Veterans Affairs Hospital[1] ("VA") in New Orleans, Louisiana from March 29, 2018 until July 9, 2018.[5]

2.      Ms. Dowdell had two children of the ages of 2 and 10 years at the time and her husband worked overseas several months out of the year.

3.       Mr. Labeaud knew that Dowdell had two children at home and that Ms. Dowdell's husband was a merchant marine, working overseas a lot.

4.      CASS has a call off policy in its Handbook which provides: "If you are unable to report to work on time for any reason, it's your responsibility to insure you notify your supervisor a minimum of four (4) hours in advance. Texting or asking another employee, a friend, or relative to give this notification is not considered proper, except under emergency circumstances."

5.      The company's policy regarding no call/no shows provided as follows: "Employees who fail to notify their supervisor of an absence, when scheduled to work and then do not show up to work is subject to the following disciplinary actions: Employees without a previous write-up will be placed on "Final Warning," employees with a previous write up will be terminated. Two (2) separate no call/no show incidents are considered job abandonment  and will result in termination of employment"

6.      Ms. Dowdell had never called off or missed a shift prior to July 5, 2018 and had no write-ups or other disciplinary actions in her employment file.

7.      On June 11, 2018, Ms. Dowdell reported to CASS Site Manager Freda Herbert that on June 5, 2018, a shift supervisor, Ahmad Assad, touched and squeezed the inside of her upper left thigh while she was working at the Transitional Living Post during her afternoon shift.

8.      Ms. Herbert asked Ms. Dowdell to complete an incident report, telephoned Director of Operations Christopher Culpepper, and then reported the incident to Mr. Culpepper and the VA hospital police.  After interviewing Mr. Assad, Christopher Culpepper terminated his employment.

9.      Mr. Assad is a veteran and a patient of the VA.

10.     On June 28, 2018, Ms. Herbert emailed the schedule for the first week of July 2018, according to which Plaintiff was scheduled to work on July 1-3 from 7:00 a.m. to

---

[5] CASS employs approximately 325 employees nationwide.

7:00 p.m. and on July 4, 2018 from 7:00 am to 11:00 am and was off on July 5-7, 2018. Dowdell worked the scheduled shifts from July 1-4, 2018.

11.   On June 29, 2018, CASS added an overnight shift on July 5, 2018 to Dowdell's schedule.  Dowdell called off because she had no childcare but CASS did not accept her call-off.  Dowdell did not work her scheduled shift on July 5, 2018.

12.   On July 6, 2018, Ms. Herbert circulated a second amended schedule for the week of July 1, 2018 adding an overnight shift for Ms. Dowdell on July 7th, 2018. Dowdell called off again but her call off was not accepted. Dowdell did not work her scheduled shift on July 7, 2018.

13.   On July 7, 2018. Dowdell received her schedule for the second week of July, according to which she was scheduled to work overnight on July 8, 9, 10, and 11 2018 at the post called "Clean Energy Plant" ("CEP").

14    Dowdell did not work her scheduled shift on July 8, 2018.

15.   On July 7, 2018, Mr. Labeaud emailed Ms. Dowdell informing her that the schedule is done to meet the needs of client and no employee is guaranteed a particular post and shift and stating "if you are unable to work the schedule assigned to you then you may be placed on a part time status. Mrs. Herbert would like to meet with you on Monday July 9th at 10:00 a.m. in the conference room."

16.   Ms. Dowdell attended a meeting with Ms. Herbert and Mr. Labeaud on July 9, 2018.

17.   Ms. Dowdell's employment ended on July 9, 2018.

## VIII.   <u>CONTESTED ISSUES OF FACT</u>

1.   Whether Dowdell told Freda Herbert during the job interview that she could not work overnight shifts unless her husband is in town to watch the children overnight.

2.   Whether Dowdell worked any overnight shifts in June 2018 and whether Plaintiff signed and dated the sign-in sheets in June 2018.

3.   Whether Shift Supervisor Mr. Assad ever received sexual harassment training.

4.   Whether Ms. Herbert and Mr. Assad worked together prior to CASS and were friends or acquaintances outside of work.

5.   Whether Mr. Assad sexually harassed Ms. Thompson in or around March 2018 and whether Thompson reported the sexual harassment to Ms. Herbert.

**6.**     Whether Herbert believed that Assad sexually harassed Thompson.

**7.**     Whether Defendant covered up the fact that Thompson reported sexual harassment by Assad.

**8.**     Whether Assad sexually assaulted Dowdell on June 5, 2018 by grabbing the inside of her upper left thigh close to my vagina while saying "Hey my girl, what's up muscles?"

**9.**     Whether when Dowdell reported the sexual assault to Herbert, she indicated that Assad previously harassed Officer Thompson.

**10.**   Whether Herbert believed that Assad sexually harassed Dowdell.

**11.**   Whether Plaintiff developed anxiety and a fear of men subsequent the sexual assault and was afraid to be at the VA hospital after 4:00 p.m. when the patients and most workers left for the day.

**12.**   Whether Dowdell told Labeaud that she was afraid to work after 4:00 p.m. when all employees are gone after what happened with Assad and whether Labeaud promised that Plaintiff did not have to work overnight and that he would not switch her location from TLR.

**13.**   Whether Labeaud immediately called Herbert on speakerphone and told her that Dowdell is afraid to work overnight and at remote locations and whether Herbert agreed to not schedule her overnight during that phone conversation.

**14.**   Whether, as of June 16, 2018, CASS employees were informed that they had a set schedule for the remainder of the year and that Ms. Dowdell was scheduled to work Sundays, Mondays and Tuesdays from 7:00 a.m. to 7:00 p.m. and Wednesdays from 7:00a.m. - 1:00 p.m.

**15.**   Whether Herbert was ultimately responsible for making the work schedules.

**16.**   Whether Dowdell properly called off under CASS' policy for the July 5, 2018 overnight shift that was added to her full-time schedule when she emailed Labeaud on June 29, 2018, asked him to call her and stated that she cannot work on the fifth because nobody will be in town to watch her kids.

**17.**    Whether Dowdell properly called off under CASS' policy for the July 7, 2018 overnight shift that was added to her full-time schedule with 24 hour notice when she tried to call supervisor Body twice and emailed 5 ½ hours before the shift informing him that she was unable to come in tonight due to personal reasons.

18. Whether other security offers could have been scheduled for the overnight shifts on July 5, and 7, 2018.

19. Whether CASS has converted any other employee's call off into a no-call/no-show under nearly identical circumstances.

20. Whether CASS accepted other employee's call offs under nearly identical circumstances.

21. Whether CASS was short on manpower in July 2018.

22. Whether Plaintiff working night shifts instead of day shifts was necessary to meet the client's needs.

23. Whether for the second week of July, 2018 Herbert or Labeaud changed Plaintiff's schedule requiring her to work overnight from 7:00 p.m. to 7:00 a.m. Sunday to Tuesday (July 8-10, 2018) and from 11:00 p.m. to 7:00 a.m. on Wednesday, July 11, 2018, after Ms. Dowdell called off for her overnight shifts on July 5 and 7.

24. Whether Hebert terminated Dowdell during the meeting on July 9, 2018.

25. Whether CASS retaliated against Dowdell by changing her schedule and/or scheduling her overnight

26. Whether CASS employees were guaranteed to work at one specific post, guaranteed to work a specific shift and whether CASS schedules were subject to change.

27. Whether Dowdell's discharge was retaliation for reporting sexual harassment.

28. Whether Defendant acted with willful disregard of Plaintiff's rights under Title VII of the Civil Rights Act.

29. Whether Dowdell suffered any compensable pain and suffering.

30. Whether Dowdell was a qualified individual with a disability.

31. Whether Dowdell's disability was known to CASS.

32. Whether Dowdell sought a reasonable accommodation for a disability.

33. Whether CASS failed to accommodate that disability.

34. Whether Dowdell mitigated her damages.

## IX.   <u>CONTESTED ISSUES OF LAW</u>

A. Whether Dowdell exhausted her administrative remedies concerning her, sex discrimination and disability discrimination claims.

B. Whether Plaintiff was subjected to unwelcome harassment under Title VII

C. Whether the alleged sexual harassment act was severe or pervasive.

D. Whether the alleged sexual harassment constituted a hostile work environment.

E. Whether Plaintiff suffered any tangible employment action as a result of her complaint of alleged sexual harassment.

F. Whether CASS knew or should have known of the harassment and failed to take prompt remedial action.

G. Whether Plaintiff unreasonably failed to take advantage of corrective measures available to her.

H. Whether Plaintiff engaged in a protected activity.

I. Whether Plaintiff's termination and schedule change constituted retaliation for engaging in a protected activity.

J. Whether changing Plaintiff's schedule constitutes a materially adverse employment action.

K. Whether there was a causal link between Plaintiff's report of sexual harassment and the schedule change and/or her termination

L. Whether Defendant's articulated reason for Plaintiff's schedule change and termination was a pretext for retaliation.

M. Whether Defendant acted with malice and reckless indifference to Plaintiff's protected rights under Title VII of the Civil Rights Act and the LEDL.

X.   **EXHIBITS**

   A.  **Plaintiff's Exhibits Without Objection**

| | | |
|---|---|---|
| 1. | Culpepper's Employee handbook effective January 2017 | Culpepper-000188 - Culpepper-000241 |
| 2. | Culpepper's Employee Handbook effective April 1, 2018 | Culpepper-000242 – Culpepper-000317 |
| 3. | Defendant's shift schedules at the New Orleans VA Hospital site from March 1, 2018 to July 30, 2018 and emails forwarding the schedules to Plaintiff. | Culpepper-000035-Culpepper-000036 Culpepper-000164-Culpepper-000165 Culpepper-000178-Culpepper-000179 Culpepper-000183-Culpepper-000184 Culpepper-000062-Culpepper-000063 Culpepper-0000342, Culpepper-000344 Dowdell-000012-Dowdell-000013 |
| 4. | E-mail from Ules Labeaud to Freda Herbert and others dated 7/7/2018 regarding the schedule is to meet the needs of the client. | Culpepper-000329 |
| 5. | E-mails to and from Freda Herbert and Nigil Dowdell dated 7/7/2018 re. call offs. | Culpepper-000338 |

| | | |
|---|---|---|
| 6. | E-mail from Robert Body to Nigil Dowdell dated 7/7/2018 re. call off. | Culpepper-000337 |
| 7. | E-mail from Ules Labeaud to Freda Herbert and Nigil Dowdell dated 7/7/2018 at 4:30. | Dowdell-00001 |
| 8. | E-mail from Ules Labeaud to Freda Herbert and others dated 6/26/2018 regarding holiday schedule on July 4, 2018.( Dowdell-000461) | Culpepper-000319 |
| 9. | E-mail from Ules Labeaud to Freda Herbert and others dated 7/7/2018 forwarding July week # 2 schedule Dowdell-000467- Dowdell-000470 | Dowell-000012-14 |
| 10. | E-mail from Freda Herbert to Christopher Culpepper dated 2/7/2019 | Culpepper-000037-38 |
| 11. | Email from Freda Herbert to Ules Labeaud dated June 29, 2018 re. first revised July 1-7 schedule. | Dowdell-000005-6 |
| 12. | E-mail from Freda Herbert to Nigil Dowdell and others dated 7/6/2018 re. second revised July 1-7, 2018 schedule | Dowdell-000007- Dowdell-000008 |
| 13. | E-mail from Freda Herbert to Buchanan and others dated June 28, 2018 re. original July 1-7 schedule | Culpepper-000062-63 |
| 14. | E-mail from Jay Magg to Freda Herbert dated 7/8/2018 | Culpepper-0000040 |
| 15. | E-mail from Freda Herbert to Buchanan and other dated June 4, 2018 re revised schedule | Dowdell-000019-21 |
| 16. | E-mail exchange between Nigil Dowdell and Freda Herbert dated June 11, 2018 re. reporting of harassment. | Dowdell-000031 |
| 17. | E-mail from Ules Labeaud to Freda Herbert and others regarding following schedule of week 2 for week 3. | Dowdell-000001 |
| 18. | E-mail from Plaintiff to Robert Body, III dated July 7, 2018 at 1:26 p.m. calling off. | Culpepper-000336 |
| 19. | E-mail from Labeaud to Freda Herbert and others dated 6/5/2018 re a schedule change on 6/8/2018 | Culpepper-000324 |
| 20. | Email from Labeaud to Plaintiff and Freda Herbert dated July 7, 2018 re. meeting request on July 9, 2018 and schedule is made to meet needs of the client. | Culpepper-000340 |
| 21. | E-mail from Ules Labeaud to Freda Herbert dated June 29, 2018 regarding Plaintiff's inability to work on July 5, 2018. | Culpepper-000185 |

| 22. | Email from Freda Herbert to Vincent Price and Christopher Culpepper dated 7/8/2019 alleging 3 no call/no shows | Culpepper-000041 |
|---|---|---|
| 23. | E-mail from Ules Labeaud to Freda Herbert dated 7/9/2018 re July 9, 2018 meeting | Culpepper-000045-Culpepper-000046 |
| 24. | E-mail from Ules Labeaud dated 6/11/2018 about mandatory meeting for all female officers on June 12, 2018. | Culpepper-000326 |
| 25. | E-mail from Ules Labeaud to Freda Herbert and others dated 7/2/2018 cancelling mandatory employee meeting on July 5, 2018. | Culpepper-000328 |
| 26. | E-mail from Ules Labeaud to Freda Herbert dated 7/7/2018 re. Plaintiff not working her night shift | Culpepper-000339 |
| 27. | E-mail from Freda Hebert to Nigil Dowdell and Schrell Cauley dated 7/6/2018 regarding schedule change. | Culpepper-000342 & 344 |
| 28. | List of employees working at Culpepper's VA Hospital site | Culpepper-000049 |
| 29. | Relevant excerpts of Plaintiff's EEOC Charge File. | Culpepper-000047-48 Culpepper-000094-95 Culpepper-0000126-Culpepper -000130 |
| 30. | Plaintiff's 2018 W-2 from Culpepper (redacted of SS #) | Culpepper-000144 |
| 31. | E-mail from Jonathan Doucette to Ules Labeaud dated June 11, 2018 regarding his knowledge of the assault on Plaintiff | Culpepper-000070 |
| 32. | E-mail from Freda Herbert to Christopher Culpepper dated June 9, 2018 summarizing Plaintiff's report of sexual assault and investigation. | Cupepper-000071 |
| 33. | Incomplete copy of the incident report filled out by Plaintiff on June 11, 2018. | Culpepper-000553-Culpepper-000554 |
| 34. | Lists of jobs that plaintiff applied for between July 9, 2018 and May 2020. | Dowdell-000083-98. |
| 35. | E-mail regarding Plaintiff passing the fire recruit written examination | Dowdell-000099. |

| 36. | Certificate of discharge to Merchant Mariner regarding Plaintiff's husband's assignment to a vessel in New Orleans on July 7, 2018 at 8:00 a.m. | Dowdell-000102 |
|---|---|---|
| 37. | Plaintiff's personnel file. | Culpepper-0000112-Culpepper-000125 |
| 38. | Ahmad Mubarak-Assad's Personnel file | Culpepper-000070-Culpepper-000076 |
| 39. | Dr. G. Randolph Rice's Economic Expert Report | Dowdell-000032-59 |
| 40. | E-mail from Labeaud dated June 11, 2018 to all officer regarding correction of date for mandatory female officer meeting on June 13, 2018 | Culpepper-000326 |
| 41. | E-mail from Labeaud to Herbert regarding Plaintiff's call- off for July 5, 2018 shift and Plaintiff requesting call. | Culpepper-000335 |
| 42. | Defendant's Responses to Plaintiff's Discovery Requests | |
| 43. | Any documents produced by Defendant | |
| 44. | Exhibits needed for rebuttal or impeachment purposes | |

**B. Plaintiff's Exhibits with objections**

Defendant objects to the following exhibits because they were not produced until after discovery closed.  The documents are also subject to Defendant's Motion to Strike.

1.  E-mail from Labeaud to Herbert and security officers dated June 15, 2018 regarding new schedule starting June 17, 2018 for the remainder of the year. (Dowdell-000455)

2.  E-mail from Labeaud to Herbert and security offers dated June 16, 2018 forwarding the schedule for June week 4. (Dowdell-000456)

3.  June 2018 week 4 schedule attached to email dated June 16, 2018. (Dowdell-000457-Dowdell-000458.)

4.  Defendant's shift schedules at the New Orleans VA Hospital site from March 1, 2018 to July 30, 2018 and emails forwarding the schedules to Plaintiff (Dowdell-000325- Dowdell-000327, Dowdell-000426- Dowdell-000432, Dowdell-000370 Dowdell-000437- Dowdell-000438, Dowdell-000376- Dowdell-000378 Dowdell-000444- Dowdell-000445, Dowdell-000456- Dowdell-000460)

5.  E-mail from Freda Herbert to team dated 6/14/18 re schedule (Dowdell 000384)

6.  E-mail from Plaintiff to Labeaud dated July 8, 2018 confirming that she will attend the July 9, 2018 meeting. (Dowdell-000406)

7.  June 29 Email from Ules Labeaud to Team re revised schedule (Dowdell 000463-464)

8.  Excerpts of Plaintiff's Medical records (Dowdell -000142- Dowdell-000143 Dowdell-000192 Dowdell-000233 Dowdell-000263 Dowdell-000117)

9.  E-mail from Labeaud dated June 11, 2018 to all officer regarding correction of date for mandatory female officer meeting on June 13, 2018. (Dowdell-000454)

10  E-mail from Labeaud to officers re schedule change for June week 3.( Dowdell-000459-Dowdell-000460)

11. E-mail from Labeaud to officers dated April 14, 2018 forwarding schedule for April week 3. (Dowdell-000426 Dowdell-000428)

Defendant objects to the following exhibits because the exhibits are not listed in Exhibit List or Supplemental Disclosures.  Plaintiff intends to file a Motion for leave to amend her exhibit list as these documents were produced to Plaintiff after the exhibit list was filed and, upon information and belief are not on Defendant's exhibit list either.

12. No call/no show reports for Plaintiff (Culpepper-000534-Culpepper-000535)

13. August 4, 2018 Call off log regarding Officer Body calling off for the stated reason "had something to do." (Culpepper-000555)

14. June 18, 2018 Call off log regarding Officer Body calling off for the stated reason "no babysitter for his child."(ulpepper-000556)

15. Officer Coates Early Leave Log dated December 28, 2018 for stated reach "baby was sick" (Culpepper-000558)

16. April 19, 2018 termination letter of Coates (Culpepper-000559)

17. Coates Consecutive Employee Warning Report (Culpepper-000560-62)

18. Aug. 4, 2018 Call Off Log for Gilmore for stated reason "not feeling good." (Culpepper-000565)

19. September 11, 2018 final warning letter to Sarah Sylve (Culpepper-000579- Culpepper-000580)

20. June 6, 2018 Email from Nigel Dowdell to Gilmore (Dowdell 000402)

21. June 6, 2018 Email Labeaud to team re upcoming schedule changes (Dowdell 000451)

22. Late call off and no call no show from Officer Stack (Culpepper-000584- Culpepper - 000586)

23. Response to Requests for Admission (Dowdell-000504-Dowdell-000507)

24. Aug. 9, 2018 Call Off Log for Stack for stated reason "not feeling good." (Culpepper-000583)


**C.  Defendant's Exhibits without Objections**

1.  Company Policies on Attendance (Culpepper-000001-Culpepper-000017)

2.  Plaintiff's Personnel Documents        (Culpepper-000018-Culpepper-000030)

3.  Schedule for April 1 – April 14, 2018 (Culpepper-000035-Culpepper-000036)

4.  Email from Jay Magg to Freda Herbert dated 7/8/2018 re no show (Culpepper-000040)

5.  Email from Freda Herbert to Vincent Price, Christopher Culpepper dated 7/8/18 re no show (Culpepper-000041)

6.  Letter of Termination for Ahmad Mubarak-Assad dated 6/12/2018 (Culpepper-000046)

7.  EEOC Charge of Discrimination  (Culpepper-000047)

8.   EEOC Dismissal and Notice of Rights (Culpepper-000048)

9.  List of employees with gender and hire date (Culpepper-000049)

10. Organizational Chart (Culpepper-000069)

11. Ahmad Mubarak-Assad's Personnel Documents        (Culpepper-000070-Culpepper-000076)

12. Email from Labeaud to Herbert 6/29/18 forwarding Dowdell's message (Culpepper-000185)

13. Email from Dowdell to Herbert 7/7/18 (Culpepper-000186-Culpepper-000187)

14. Employee Handbook 2018 (Culpepper-000242-Culpepper-000318)

15. Termination Notices and No call/No show reports (Culpepper-0000527-Culpepper-000530)

16. Dowdell no call/no shows        (Culpepper-000534-Culpepper-000536)

17. Christopher Culpepper emails (Culpepper 000538-000540)

18. 2018 interview schedule (Culpepper-000537)

19. Email from Ules LaBeaud to Plaintiff (Dowdell 1-Dowdell 2)

20. Text messages and emails between Robert Body and Plaintiff (Dowdell 10; Culpepper 000336)

21. VA Report (Dowdell-000025-Dowdell-000028); (Culpepper 000541-000542)

22. Call Off and No Call/No Show documents for other employees (Culpepper 000555-000597).

23. Plaintiff's Social Media Postings (Dowdell-000069-000082)

24. Email from Freda Herbert to Plaintiff (Dowdell 000007-000008; Dowdell 000012-000014; Dowdell 00019-000021; Dowdell 000031

25. Plaintiff's Tax Documents and documents associated with post-employment earnings (Dowdell 000067; Culpepper 000144; Dowdell 000083-000099)

26. Plaintiff' Initial Disclosures (Culpepper 00603-603; 631-637; 648-654)

27. Plaintiff's Responses to Defendant's Discovery Requests (Culpepper 000607-630; 638-647; 655-657)

28. Any document produced by plaintiff

29. Exhibits needed for rebuttal or impeachment purposes.

**D.  Defendant's Exhibits without Objections**

1. Dowdell Timecard Report        (Culpepper-000031-Culpepper-000034) (objected by Plaintiff based on lack of foundation and authenticity)

2. Schedule for July 1 - July 7, 2018 (Culpepper-000037-Culpepper-000039) (Plaintiff objects to Culpepper-000039 for lack of foundation.)

3. Email from Freda Herbert to Christopher Culpepper dated 7/9/2018 re July 9, 2018 meeting (Culpepper-000042-Culpepper-000044) (objected by Plaintiff based on hearsay)

4. Email from Ules Labeaud to Freda Herbert dated 7/9/2018 re July 9, 2018 meeting (Culpepper-000045) (objected by Plaintiff. Hearsay)

5. Schedules (including emailed schedules)      (Culpepper-000050-Culpepper-000068; Culpepper 000107-Culpepper 000111; Culpepper 000164-Culpepper 000165; Culpepper-000145-Culpepper-000184; Culpepper-000348-Culpepper-000351); (Culpepper 000598-000602) (Plaintiff objects to the following documents based lack of foundation and unauthenticity: Culpepper-000050-61, 107-11, 145-163, 166-177, 180-182, and 348-351.  Plaintiff objects to Culpepper-000598-602 based on relevancy and hearsay.)

6. Job Description – Security Guard      (Culpepper-000077-Culpepper-000078) (objected by Plaintiff. Unauthenticated.  Reads as if this is from the VA but not clear, irrelevant, lack of foundation.)

7. EEOC FOIA File      (Culpepper-000079-Culpepper-000143) (objected by Plaintiff to Culpepper-000103-106 (time card reports, no foundation, hearsay), Culpepper-000109-111 schedules never received by Plaintiff)

8. Emails regarding schedules and meetings (Culpepper-000319-Culpepper-000347) (Plaintiff objects to Culpepper-000331-333 on the bases that it is an unauthenticated schedule without proof that Plaintiff received it.)

9. Harassment Training Materials (Slides)      (Culpepper-000352-Culpepper-000420) (objected by Plaintiff based on unauthenticated and dates inconsistent. hearsay)

10. Harassment Training Acknowledgments and Tests (Herbert and Labeaud) (Culpepper-000421-Culpepper-000433) (objected by Plaintiff based on unauthenticated and dates inconsistent. hearsay)

11. Dowdell interview documents (Culpepper-000531-Culpepper-000533) (objected by plaintiff based on hearsay)


## XI.   **DEPOSITION TESTIMONY**

A. The parties may seek to use the deposition of any witness unable to appear at court to

testify.

XII.   **DEMONSTRATIVE EXHIBITS**

A. Plaintiff may use a chart outlining and describing her work schedule during her employment at CASS.

B. Plaintiff will use enlargements of exhibits in whole or in part admitted into evidence.

C. Plaintiff may also use charts, graphs, summaries, or diagrams showing a list of Plaintiff's claims asserted in the lawsuit, a timeline of relevant events in the matter, excerpts of deposition testimony or summaries of testimony or other related information.

D. Plaintiff will also use pictures exemplifying how and where Assad touched Dowdell on June 5, 2018 during the shift change.

E. Defendant may use enlargements of exhibits in whole or in part admitted into evidence.

F. The parties agree to submit any demonstrative exhibit to opposing counsel at least five full working days prior to trial and, if there is an opposition to their use, the dispute will be submitted to the Court at least three full working days prior to trial.

XIII.   **WITNESSES**

    **A.  Plaintiff may call the following witnesses:**

    **1.**    **Nigil Dowdell**
        c/o Amanda Butler
        Business Law Group, LLC
        700 Camp Street
        New Orleans, LA 70130

        Ms. Dowdell has knowledge of the factual basis for her claims and damages.

    **2.**    **Stephanie Jackson,** Plaintiff's mother.
        c/o Amanda Butler
        Business Law Group, LLC
        700 Camp Street
        New Orleans, LA 70130

Ms. Jackson has knowledge of Ms. Dowdell's emotional and physical wellbeing after the sexual assault by Mr. Assad.

3.    **Tyra Branch**, Plaintiff's sister.
Through Counsel of Record
700 Camp Street
New Orleans, LA 70130

Ms. Branch has knowledge of Ms. Dowdell's emotional and physical wellbeing after the sexual assault by Mr. Assad.

4.    **G. Randolph Rice, Ph.D.**, economic expert
7048 Montteau Court
Baton Rouge, LA 70809

Dr. Randolph Rice may testify about Plaintiff's monetary damages after her termination from CASS.

5.    **Brasuan Thompson**
19507 Lighthouse Scene Ln.
Cypress, TX 77433
Phone: (504) 289-9224

Ms. Thompson has knowledge about the company's policies and procedures, sexual harassment experienced by Assad and the company's response to her reporting of the sexual harassment to management.

6.    **Alicia Washington**
New Orleans VA Medical Center
2400 Canal Street
New Orleans, LA 70119
Phone:(504) 333-9230

Ms. Washington has knowledge about Plaintiff's anxiety and fear at work after the sexual assault and about Plaintiff's request to Labeaud and Herbert not to be scheduled overnight.

7.    **Robert Body, III**,
1330 Port Street
New Orleans, LA 70117
Phone: (504) 261-9079

Mr. Body has knowledge about the Company's policies and procedures and Plaintiff's call off on July 7, 2018.

8.    **Freda Herbert**
Though Defense Counsel

Ms. Herbert has knowledge of the company policies and procedures and about the factual basis for Plaintiff's claims and Defendant's defenses.

9.   **Ules LeBeaud**,
     Though Defense Counsel

     Mr. Labeaud has knowledge of the company policies and procedures and about the factual basis for Plaintiff's claims and Defendant's defenses

10.  **Christopher Culpepper,**
     Though Defense Counsel

     Mr. Culpepper has knowledge of the company policies and procedures and about the factual basis for Plaintiff's claims and Defendant's defenses

11.  **Lieutenant Wissing**
     VA Police Department
     2400 Canal Street
     New Orleans, LA 70119

     Lieutenant Wissing has knowledge about Plaintiff's report of sexual harassment and the area of the VA hospital that has to be surveilled by CASS staff.

12.  Any witness identified in discovery or listed by any party.

13.  Custodian of records for Defendant's company records.

14.  Any witness Defendant will or may call.

15.  Any witness listed on Defendant's Initial Disclosures, Witness List or subsequent witness list filed by Defendant.

16.  Any witness for impeachment or rebuttal purposes.


B.  **Defendant may call the following witnesses**:

1)  Nigil Dowdell, Plaintiff.  Ms. Dowdell has knowledge of the factual basis for her claims, her damages, and Defendant's defenses made in this case.

2)  Freda Hebert.  Ms. Hebert has knowledge of defendant's defenses made in this case and plaintiff's employment with defendant, including her work performance.

3)  Christopher Culpepper. Mr. Culpepper has knowledge of defendant's defenses made in this case and plaintiff's employment with defendant, including her work performance.  Mr. Culpepper may be contacted through undersigned counsel.

4)     Ules Labeaud.  Ules Labeaud has knowledge of defendant's defenses made in this case and plaintiff's employment with defendant, including her work performance.

5)     Dr. Brigetta Yancy.  Dr. Yancy has knowledge related to plaintiff's claims of emotional damages.

6)     Any witness identified in discovery or listed by any party.

7)     Any treating physician, pharmacist or health care provider of plaintiff.

8)     Custodian of Records for any physician, pharmacist or health care provider of plaintiff.

9)     Custodian of Personnel Records for any employer of plaintiff.

10)    Any witnesses Plaintiff will call or may call.

11)    Any witness listed in Plaintiff's Initial Disclosures, Witness List or any subsequent witness list filed by Plaintiff.

12)    Any witness necessary for impeachment or rebuttal purposes.

All parties have filed their witness lists in accordance with prior court orders.

**XIV.**    **JURY OR NON-JURY CASE**

This case is bench trial. Suggested findings of fact and conclusions of law, as well as trial memoranda will be submitted.

**XV.**    **ISSUES OF LIABILITY AND QUANTUM**

**XVI.**    The issue of liability will not be tried separately from that of quantum.

**XVII.**    **OTHER MATTERS THAT MIGHT EXPEDITE A DISPOSITION OF THE CASE**

Resolution of Defendant's Motion for Summary Judgment (Docket 52), Defendant's Motion to Strike Plaintiff's Inadmissible and Sham Summary Judgment Evidence (Docket 63), and Defendant's Motion *in Limine* (Docket 56).

**TRIAL**

The trial shall commence on September 21, 2020 at 8:30.

XVIII. **PRETRIAL ORDER STATEMENT**

This pretrial order has been formulated after conference at which counsel for the respective parties have participated via telephone. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

XIX. **SETTLEMENT**

The possibility of settlement of this case was considered.

Respectfully submitted on this 26th day of August, 2020 by

_____/s/  Susanne Cooper_____
Amanda J. Butler (T.A.) (LSBA # 31644)
abutler@lawgroup.biz
Susanne Cooper (LSBA #27361)
scooper@lawgroup.biz
700 Camp St., Ste. 405
New Orleans, LA 70130
Telephone: (504) 528-9500
Facsimile: (504) 754-7776
**COUNSEL FOR PLAINTIFF,**
**NIGIL DOWDELL**

_/s/  Amanda Goldman_
Susan Fahey Desmond (T.A.) (LSBA # 25380)
Susan.Desmond@jacksonlewis.com
Amanda Wingfield Goldman (LSBA #30800)
Amanda.Goldman@jacksonlewis.com
650 Poydras Street, Suite 1900
New Orleans, LA 70130
Telephone:     (504) 208-1755
Facsimile:      (504) 208-1759
**COUNSEL FOR DEFENDANT,**
**CULPEPPER & ASSOCIATES SECURITY SERVICES, INC.**

4837-4429-7673, v. 4