## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**NIGIL DOWDELL,**
    **Plaintiff**

**CIVIL ACTON**

**VERSUS**

**NO. 19-11410**

**CULPEPPER & ASSOCIATES**
**SECURITY SERVICES, INC.,**
    **Defendant**

**SECTION "E" (4)**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant Culpepper and Associates Security Services, Inc.[1] For the reasons that follow, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was hired by Defendant to work as a Security Officer at the New Orleans Veterans Hospital in New Orleans, Louisiana.[2] Plaintiff was employed by Defendant from March 29, 2018, until July 9, 2018.[3]

Plaintiff brings claims for sexual harassment in violation of 42 U.S.C.A. § 2000e (Title VII); hostile work environment in violation of Title VII; retaliation in violation of Title VII; and violation of the Americans with Disabilities Act (ADA) for failure to provide reasonable accommodations for a temporarily disability.[4] Additionally, Plaintiff brings claims under Louisiana law.[5]

---

[1] R. Doc. 52. Plaintiff Nigil Dowdell opposes the motion. R. Doc. 67. Defendant replied to Plaintiff's opposition. R. Doc. 69. Plaintiff filed a Sur Reply in response to Defendant's reply. R. Doc. 77.
[2] R. Doc. 52-1 at ¶ 1; R. Doc. 67-1 at ¶ 1.
[3] *Id.*
[4] R. Doc. 1-1 at 7-9.
[5] *Id.*

Plaintiff alleges her claims stemmed from an incident of sexual harassment that took place on June 5, 2018.[6,7] On that day, Plaintiff alleges she was at work when shift supervisor, Ahmad Assad, touched her inappropriately.[8] In her state court petition, Plaintiff alleges she reported the incident to Defendant's office administrator, Ms. Freda Herbert.[9] After Plaintiff reported the incident, Assad was fired.[10] On November 1, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on her own behalf.[11]

## LAW AND ANALYSIS

### I.    Failure to Exhaust Administrative Remedies

Title VII makes it unlawful for an employer to discriminate against any individual "with respect to compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin."[12] A complainant must file a timely charge with the Equal Employment Opportunity Commission (EEOC), or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice, prior to commencing a civil action in federal court under Title VII.[13] In assessing whether a charge properly exhausts a particular claim, the EEOC charge is to

---

[6] R. Doc. 1-1 at ¶ 15; R. Doc. 52-1 at ¶ 11.

[7] In her affidavit attached to her opposition to the motion for summary judgment, Plaintiff states that prior to this incident, Assad had regularly greeted her with "Morning beautiful" or "Hey gorgeous," and would linger around her during breaks at work. R. Doc. 67-2 at 2-3. Defendant has filed a motion to strike the Plaintiff's declaration and certain exhibits attached thereto. R. Doc. 63. The Court has not yet ruled on the motion to strike. The declaration and the objected-to exhibits are not determinative and were not considered by the Court in connection with this ruling.

[8] *Id.*

[9] R. Doc. 1-1 at 4. Plaintiff refers to Ms. Herbert as "Ms. Hebert" in her petition. However, in Plaintiff's opposition, her name is spelled "Herbert," which the Court presumes is accurate and uses throughout this order. R. Doc. 67 at 2.

[10] R. Doc. 1-1 at ¶ 21; R. Doc. 52-1 at ¶ 12.

[11] R. Doc. 1-1 at ¶ 11; R. Doc. 52-5; R. Doc. 67-5 at 3.

[12] 42 U.S.C.A. § 2000e(a)(1).

[13] 42 U.S.C.A. § 2000e-5.

be construed broadly, as Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship".[14] However, the court will only find a claim is exhausted when it could "reasonably be expected to grow out of the charge of discrimination."[15] An employee may file a civil action "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."[16]

A complainant also must comply with the ADA's administrative requirements prior to commencing an action in federal court by filing a charge with the EEOC alleging discrimination based on disability.[17] "The ADA incorporates Title VII's "powers, remedies, and procedures," including its administrative exhaustion requirements."[18] As with Title VII, the scope of the EEOC charge should be limited to those claims which can reasonably be expected to grow out of the charge.[19]

The Fifth Circuit explains "because more complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally."[20] Defendant argues, because Plaintiff mentioned an attorney in her EEOC charge, Plaintiff was not pro se when she prepared her EEOC charge, and accordingly the charge should not be interpreted

---

[14] *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008) (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970)).

[15] *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970).

[16] *Fellows v. Universal Rests., Inc.,* 701 F.2d 447, 451 (5th Cir. 1983).

[17] 42 U.S.C. § 2000e-5(f)(1); *see also Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir. 1996).

[18] *Dye v. IASIS Glenwood Regional Medical Center LP,* 2018 WL 5660319 at *6 (W.D. La. Oct. 9, 2018) (citing 42 U.S.C. § 12117).

[19] *Franklin v. City of Slidell,* 936 F. Supp. 2d 691, 709-10 (E.D. La. 2013) (noting the administrative exhaustion requirements for ADA claims are the same as Title VII claims).

[20] *Pacheco v. Mineta,* 448 F.3d 783, 788 (5th Cir. 2006).

broadly.[21] Plaintiff's only mention of an attorney in her EEOC charge references advice she received from an attorney regarding reporting to a work shift. Plaintiff does not otherwise indicate, and it does not appear to the Court, she had the assistance of counsel in drafting her EEOC charge. Defendant has not provided evidence Plaintiff was assisted by counsel in preparing her EEOC charge. The Court will consider Plaintiff as being pro se at the time she filed her charge, and the charge will be construed liberally for the purpose of determining administrative exhaustion.[22]

Title VII's EEOC charge requirement is not jurisdictional.[23] Rather, Title VII's charge-filing instructions speak to the party's procedural obligations.[24] "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."[25] Accordingly, the appropriate disposition of Title VII claims that have not been exhausted is dismissal without prejudice.[26] A plaintiff may then return to the court after she has exhausted her administrative remedies.[27] Because the ADA's requirements for administrative exhaustion are parallel to those in Title VII, the ADA's charge-filing requirement is mandatory, like Title VII's, although "not a jurisdictional prescription delineating the adjudicatory authority of courts."[28]

---

[21] R. Doc. 69; *see McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008) (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970)).
[22] Even if the EEOC charge was not construed liberally, the Court would reach the same result.
[23] *Fort Bend County, Texas v. Davis,* 139 S. Ct. 1843, 1846 (2019).
[24] *Schellhaas v. Southwest Airlines Co.,* 2019 WL 3238565 at *4 (E.D. La. July 18, 2019).
[25] *Fort Bend County, Texas v. Davis,* 139 S. Ct. 1843, 1851 (2019)
[26] *Johnson v. City of New Orleans,* 2020 WL 1285909 at *3 (E.D. La. March 18, 2020). The Court has not made a finding as to whether any claim filed after exhaustion would be timely.
[27] *Id.*
[28] *Betts v. Winco Foods, LLC,* 2020 WL 512294 at *3 (E.D. Tex. Jan. 31, 2020) (citing *Fort Bend County, Texas v. Davis,* 139 S. Ct. 1843, 1851 (2019)).

Defendant filed the instant motion for summary judgment on Plaintiff's claims for sexual harassment and hostile work environment in violation of Title VII for failure to exhaust administrative remedies.[29] Defendant also moves to dismiss Plaintiff's ADA claim for failure to exhaust administrative remedies.[30] Defendant admits Plaintiff exhausted administrative remedies in regard to her claim of retaliation in violation of Title VII and does not seek summary judgment on this claim based on failure to exhaust administrative remedies.[31]

In this case, Plaintiff filed a charge with the EEOC on November 1, 2018.[32] In her charge, it is undisputed Plaintiff checked only the "retaliation" box on the form.[33] In the "particulars" section of her EEOC charge, Plaintiff wrote as follows:

I.   I began my employment with the above Respondent in 2017 most recently as a Security Guard. Beginning July 5, 2018 I was subjected to sexual harassment by Assad LNU. Shortly after I reported the sexual harassment I was informed of my discharge effective July 9, 2018 by Ms. Freida He[r]bert. The company employs over 100 persons.

II.  No reason was given for the actions taken against me. After I reported Assads sexual harassment he admitted to the allegations and was fired the same day. After this Ms. Freida He[r]bert tried to switch my work location. I informed her that I did not feel comfortable working at the new assigned area due to Assads termination. Ms. He[r]bert became upset after I called in several hours before my shift. When I went to the job to talk to Ms. He[r]bert I was informed of my discharge effective July 9, 2018.

III. I believe I have been retaliated against for opposing practices made illegal in violation of Title VII of the Civil Rights Act of 1964 as amended.[34]

---

[29] R. Doc. 52.
[30] *Id.*
[31] R. Doc. 52-1 at ¶ 29.
[32] R. Doc. 52-5; R. Doc. 67-5 at 3.
[33] R. Doc. 52-1 at ¶ 29; R. Doc. 67-1 at ¶ 29.
[34] R. Doc. 52-5; R. Doc. 67-5 at 3.

"While the court's scope of inquiry is not limited to the boxes checked, it is limited to that which can reasonably be expected to grow out of the charge. [T]he crucial element of a charge of discrimination is the factual statement contained therein. Everything else entered on the form is, in essence, a mere amplification of the factual allegations."[35]  A claim may reasonably be expected to grow out of a charge when the charge did or should have put the employer on notice of a potential claim.[36]

In relation to Plaintiff's claims involving sexual harassment and hostile work environment, Plaintiff has exhausted her administrative remedies. Although Plaintiff did not check the box labeled "sex" on her EEOC charge, she mentioned one instance of sexual harassment twice in the "particulars" section, and detailed behavior that happened in relation to the incident of sexual harassment. As the Fifth Circuit made clear in *Frazier v. Sabine River Authority*, failing to check the correct box does not preclude Plaintiff from exhausting administrative remedies.[37] The focus on the analysis should be on the written content of the charge. For example, the court in *Gunnell v. Utah Valley State College* found "[t]he allegation in the [EEOC charge], though sparse, identifies the type of discrimination complained of, the alleged harasser, and an approximate time period, and thus is minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement."[38] In this case, Plaintiff identifies the type of discrimination as sexual harassment, names co-worker Assad as the

---

[35] *Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 373-74 (5th Cir. 2013) (per curium).
[36] *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2003) ("One of the central purposes of the employment discrimination charge is to put employers on notice of the existence and nature of the charges against them." (internal quotation marks omitted)); *see also DeBlanc v. St. Tammy Parish* School Bd., 2015 WL 1245781 at *8 (E.D. La. March 18, 2015) (concluding defendant was on notice of plaintiff's ADA claim due to facts alleged in plaintiff's EEOC charge).
[37] *See Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 373-74 (5th Cir. 2013) (per curium).
[38] *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998).

harasser, and reports the time frame of the harassment and resulting actions in her EEOC charge. Although Plaintiff's EEOC charge is sparse, it provides enough relevant details relating to sexual assault and hostile work environment that, when construed broadly,[39] Plaintiff's writing should have put Defendant on notice of the existence and nature of the charges against it.[40]

In order to exhaust administrative remedies under the ADA, Plaintiff must file a charge with the EEOC alleging discrimination based on disability.[41] For example, in *Ross*, the plaintiff submitted an EEOC charge and checked only the "retaliation" box.[42] The court found because the plaintiff did not check the "disability" box or allege any particulars about a disability on her EEOC form, the plaintiff had not exhausted administrative remedies in relation to her ADA claim.[43] In this case, by failing to check the "disability" box or mention anything about disability in the "particulars" section of her EEOC charge, Plaintiff did not put Defendant on notice of a possible ADA claim. The claim of disability does not "reasonably grow out of" a claim for retaliation, the box Plaintiff checked, or the situation described in the "particulars" section because there was no reference whatsoever to Plaintiff's alleged temporary disability or Defendant's failure to accommodate it.[44] Plaintiff did not exhaust her administrative remedies under the ADA. Accordingly, Defendant's motion for summary judgment on the claim of violation of the

---

[39] *McClain v. Lufkin Indus.,* 519 F.3d 264, 273 (5th Cir. 2008) (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970)).
[40] *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 878-79 (5th Cir. 2003).
[41] *Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir. 1996).
[42] *Ross v. GTE Wireless of Houston, Inc.,* 2000 WL 1279618, at *8 (S. D. Tex. Jan 13, 2000).
[43] *Id.*
[44] *McClain v. Lufkin Indus.,* 519 F.3d 264, 273 (5th Cir. 2008).

ADA for failure to provide reasonable accommodations for a temporary disability is granted for failure to exhaust her administrative remedy.[45]

## II.    Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46] "An issue is material if its resolution could affect the outcome of the action."[47] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[48] All reasonable inferences are drawn in favor of the non-moving party.[49] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[50]

---

[45] In regard to Defendant's Motion *In Limine* to exclude certain evidence at trial, R. Doc. 56, motion is denied in part and granted in part**.** To the extent Defendant seeks to exclude evidence of Plaintiff's claims of sex discrimination, hostile work environment, and sexual harassment for failure to exhaust administrative remedies, the Court has determined the scope of Plaintiff's EEOC charge and has determined Plaintiff has exhausted her administrative remedies on these claims. Accordingly, Defendant's Motion *In Limine* is denied with respect to Plaintiff's sex discrimination, hostile work environment, and sexual harassment claims. The Motion *in Limine* also is denied with respect to the testimony of Brasuan Thompson as irrelevant and unduly prejudicial. Ms. Thompson's testimony may be relevant to the issue of whether Defendant knew or should have known of the sexual harassment because it was pervasive. Further, the testimony is not overly prejudicial. Defendant is reminded this case is scheduled for a bench trial and the need for pre-trial rulings on admissibility of evidence is significantly reduced. *See United States v. Carderas*, 9 F.3d 1139, 1154 (5th Cir. 1993); *Government of the Canal Zone v. Jimenez G.*, 580 F.2d 897 (5th Cir. 1978). Defendant's Motion *In Limine* is granted with respect to Plaintiff's ADA claim, as the Court found Plaintiff did not exhaust her administrative remedies on this claim. The Court will not determine at this time whether the ADA claim is time barred, as it has already determined administrative remedies were not exhausted.

[46] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.

[47] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[48] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[49] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[50] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish a genuine issue of material fact does indeed exist.[51]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating there is no evidence in the record to establish an essential element of the non-movant's claim.[52] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[53] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[54] "[U]nsubstantiated assertions are not competent

---

[51] *Celotex*, 477 U.S. at 322–24.
[52] *Id.* at 331–32 (Brennan, J., dissenting).
[53] *See id.* at 332.
[54] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving

summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[55]

### III.    Sexual Harassment/Hostile Work Environment

Plaintiff alleges she was sexually harassed on June 5, 2018, by shift manager Assad.[56] Sexual harassment is a form of sex discrimination under Title VII.[57] The Supreme Court recognizes two types of sexual harassment claims under Title VII: (1) claims based on requests for sexual favors that result in adverse employment actions ("quid pro quo claims"); and (2) claims in which bothersome attention or sexual remarks create a hostile work environment.[58]

Under quid pro quo claims, an "employer may be vicariously liable [under Title VII] for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim."[59] Although Assad's title includes the term "manager," he was not considered to be Plaintiff's manager, as he

---

party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[55] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[56] R. Doc. 1-1; R. Doc. 52-5; R. Doc. 67-5 at 3.
[57] *Gaudet v. City of Kenner*, 2012 WL 1995295 at *2 (E.D. La. June 4, 2012). Defendant moves for summary judgment on Plaintiff's sex discrimination claim. However, the sex discrimination alleged by Plaintiff is in the form of sexual harassment resulting in a hostile work environment. Accordingly, the Court analyzed the Plaintiff's claims for sex discrimination, sexual harassment, and hostile work environment jointly under the appropriate case law.
[58] *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998); *Burlington Indus. V. Ellerth*, 118 S. Ct. 2257 (1998).
[59] *Vance v. Ball State University*, 570 U.S. 421, 430-31 (2013).

did not have power to take tangible employment action against her.[60] Plaintiff admits in her opposition to Defendant's motion for summary judgment Assad did not have authority to hire or fire her and  is considered a co-worker for the purposes of Title VII.[61]

In *Hague v. University of Texas Health Science Center at San Antonio*, the Fifth Circuit held plaintiff's sexual harassment claim failed because the aggressor was not her supervisor.[62] The Fifth Circuit goes on to explain that plaintiff's harassment claim was properly analyzed under the standards for hostile work environment, because the harasser was a co-worker rather than a supervisor.[63] Similarly, because Plaintiff admits Assad is considered a co-worker for the purposes of Title VII, Plaintiff's sexual harassment claim is properly analyzed under the standards for hostile work environment.[64]

"To avoid summary judgment at the prima facie stage of a hostile work environment claims, a plaintiff must present evidence that creates a genuine dispute of material fact as to whether the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment."[65,66] In order to establish a prima facie case for hostile work

---

[60] R. Doc. 52-2 at 15.

[61] R. Doc. 67 at 26.

[62] *Hague v. Univ. of Tex. Health Sci. Ctr. At San Antonio*, 560 Fed. Appx. 328, 331 (5th Cir. 2014).

[63] *Id.* at 332 (citing *Woods v. Delta Beverage Group, Inc.,* 274 F.3d 295, 298 (5th Cir. 2001)).

[64] *Joseph v. Phillips*, 2014 WL 5429455 at *2 (E.D. La. Oct. 24, 2014) (citing *Hague v. Univ. of Tex. Health Sci. Ctr. At San Antonio*, 560 Fed. Appx. 328, 332 (5th Cir. 2014)).

[65] *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015).

[66] The *McDonnell Douglas* burden-shifting analysis does not apply to this claim. Other circuits have concluded the *McDonnell Douglas* burden-shifting does not apply in the context of hostile work environment claims under Title VII. *See Pollard v. E.I. DuPont de Nemours Co*., 213 F.3d 933, 943 (6th Cir. 2000) (explaining that the *McDonnell Douglas* framework cannot apply to a hostile work environment sexual harassment claim because "there is no legitimate justification for such an environment, and thus recourse to the *McDonnell Douglas* test is not warranted"), rev'd on other grounds; *see also Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1417 n.8 (10th Cir. 1993) overruled on other grounds; *Johnson v. Booker T. Washington Broad Serv., Inc.*, 234 F.3d 501, 510-11 (11th Cir. 2000) (the district courts should employ normal principles of proof and pleading allocation.). At this time, there is no case on point from the Fifth Circuit, but the Court finds the opinions from other circuits to be persuasive and their reasoning is adopted by the Court.

environment sexual harassment claim under Title VII, a plaintiff must show: (1) membership in a protected group; (2) unwelcome sexual harassment; (3) harassment complained of is based on sex; (4) harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[67]

In this case, there is no dispute that Plaintiff, as a woman, is a member of a protected group. Plaintiff alleges she suffered unwelcome sexual harassment on June 5, 2018, by co-worker Assad.[68] Defendant admits a complaint of sexual harassment was conveyed to Ms. Herbert shortly thereafter.[69] The harassment complained of was based on sex, as it involved inappropriate touching by a member of another gender.[70] In this instance, Plaintiff alleges she suffered a single instance of sexual harassment. "For sexual harassment to be actionable under Title VII, it must be sufficiently severe *or* pervasive to alter the conditions of the victim's employment and create an abusive working environment."[71] Further, "the test—whether the harassment is severe or pervasive—is stated in the disjunctive. An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment."[72] The Fifth Circuit uses an objective "reasonable person" standard to evaluate severity and pervasiveness.[73] "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable

---

[67] *Hague v. Univ. of Tex. Health Sci. Ctr. At San Antonio*, 560 Fed. Appx. 328, 332 (5th Cir. 2014).

[68] R. Doc. 1-1 at ¶ 14.

[69] R. Doc. 52-1 at ¶ 11; R. Doc. 67 at ¶ 11.

[70] *Hocevar v. Purdue Frederick Co.,* 223 F.3d 721, 737 (8th Cir. 2000) (determining that "[h]arassing conduct constitutes discrimination based on sex when members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

[71] *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (emphasis added).

[72] *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007).

[73] *Acosta v. Boudreau & Thibodeau's Cajun Cookin' Inc.,* 2017 WL 3521595 at 3 (E.D. La. Aug. 16, 2017).

person would find hostile or abusive, and one that the victim in fact did perceive to be so."[74]   In determining whether a work environment meets this standard, the court considers the totality of the circumstances, "including frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."[75]

In the instant case, Plaintiff alleges one incidence of physical sexual harassment in her petition—Assad "shoving his hand between her legs and groping her vagina."[76] Under a reasonable person standard, a reasonable individual could find this action to be severe enough to alter the conditions of her employment.[77] Plaintiff alleges she did, in fact, find this action to be hostile and abusive.[78] In reaction to the described incident of sexual harassment, Plaintiff alleges in her petition that due to her fears for her safety, she began to feel overwhelming anxiety and "was left with no other option than to call in sick."[79] Considering the totality of the circumstances in a light favorable to the non-moving party, Plaintiff has shown there are disputed material facts with respect to the fourth element— that the sexual harassment she experienced affected a term, condition, or privilege of her employment—precluding summary judgment for the Defendant.

The fifth element of a prima facie case of hostile work environment is whether the employer knew or should have known of the harassment and failed to take prompt remedial action. In order to take prompt remedial action, "[a]n employer should promptly

---

[74] *Faragher v. City of Boca Raton,* 118 S. Ct. 2275, 2283 (1998).
[75] *Id.*
[76] R. Doc. 1-1 at ¶ 14.
[77] *See Acosta v. Boudreau & Thibodeau's Cajun Cookin' Inc.,* 2017 WL 3521595 at 3 (E.D. La. Aug. 16, 2017); *see also Faragher v. City of Boca Raton,* 118 S. Ct. 2275, 2283 (1998).
[78] R. Doc. 1-1 at ¶ 21, 24, 25, 32.
[79] R. Doc. 1-1 at ¶ 25.

take all necessary steps to investigate and correct any harassment, including warnings and appropriate discipline directed at the offending party, and should generally develop other means of preventing harassment within the agency."[80] To constitute "prompt remedial action," an employer's response to a harassment complaint must be "reasonably calculated" to end harassment.[81] "What constitutes prompt remedial action, sufficient to avoid liability, is a fact-specific inquiry and not every response by an employer will be sufficient to absolve the employer of liability under Title VII."[82]

In the instant case, Plaintiff alleges in her petition that the physical sexual harassment took place on June 5, 2018, she reported the incident to Ms. Herbert, and Assad's employment was terminated on June 12, 2018.[83] The Fifth Circuit has found that an employer took prompt remedial action when it suspended the harasser one month after the incident of sexual harassment occurred.[84] In this case, it is undisputed that, after interviewing Assad, the Director of Operations promptly terminated Assad's employment and Plaintiff has not seen or spoken to Assad following his termination.[85] By just looking at this one incident, it appears that Defendant took prompt remedial action.

However, Plaintiff points out in her petition[86] and argues in her opposition that Defendant knew or should have known of Assad's harassment and taken action earlier because Assad previously sexually harassed other female employees and Defendant failed to investigate the conduct or take any action.[87] Employers are liable for a co-worker's

---

[80] *Id.* at 479 (quoting *Bundy v. Jackson* 641 F.2d 934, 947 (D.C. Cir. 1981)).
[81] *Kreamer v. Henry's Towing*, 150 Fed. Appx. 378, 382 (5th Cir. 2005) (citing *Skidmore v. Precision Printing & Packaging*, 188 F.3d 606, 615 (5th Cir. 1999).
[82] *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 640 (5th Cir. 2014).
[83] R. Doc. 1-1 at ¶ 18.
[84] *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262-63 (5th Cir. 1999).
[85] *Id.*
[86] R. Doc. 1-1 at ¶ 16.
[87] *Id.*

harassment only "when they have been negligent either in discovering or remedying the harassment."[88] An employer's legal duty in co-worker employment harassment cases will be discharged if the employer takes "reasonable steps to discover and rectify acts of sexual harassment of its employees."[89] In *Abbood v. Texas Health and Human Services Commission*, the Fifth Circuit held the defendant took prompt remedial action when the employer asked plaintiff to prepare a written statement, confronted the harasser about the allegations, reported the harasser's conduct up the chain of command, and reassigned the plaintiff to a different unit.[90]

An employer has constructive knowledge of harassment "if through the exercise of reasonable care it should have known what was going on but failed to address it," or, "[i]f the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes."[91] In the instant case, there is a factual dispute as to whether Defendant knew or should have known of Assad's behavior earlier and taken action to correct it. In her opposition, Plaintiff points to Ms. Brasuan Thompson's declaration, in which she testifies she was sexually harassed by Assad on more than one occasion and she reported the behavior to supervisors.[92] Further, Plaintiff references Ms. Thompson's declaration, in which Ms. Thompson states "[n]o one talked to me about the sexual harassment by Mr. Assad after I made the report," suggesting that

---

[88] *Rosales v. City of San Antonio, Texas,* 2001 WL 1168797 at *5 (W.D. Tex. July 12, 2001) (quoting *Williamson v. City of Houston*, 148 F.3d 462, 465-66 (5th Cir. 1998)).

[89] *Id.* (quoting *Williamson v. City of Houston*, 148 F.3d 462, 465-66 (5th Cir. 1998)).

[90] *Abbood v. Texas Health and Human Services Comm.*, 783 Fed. Appx. 459, 462 (5th Cir. 2019).

[91] *Arrieta v. Yellow Transp.,* Inc., 2008 WL 5220569 (N.D. Tex. Dec. 12, 2008) (quoting *Sharp v. City of Houston,* 164 F.3d 923, 930 (5th Cir. 1999)).

[92] R. Doc. 67-2 at 41, ¶ 10-11. Ms. Thompson states in her deposition, "I had a meeting with Mr. LaBeaud and Mrs. Gilmore scheduled the next day regarding an unrelated incident, so I told them at the meeting about the sexual harassment by Mr. Assad." Ms. Thompson further states, "Mr. LaBeaud and Ms. Gilmore called Ms. Herbert who then called Chris Culpepper and told him about all the sexual harassment incidents by Mr. Assad." Defendant did not move to strike Ms. Thompson's declaration. R. Doc. 63.

Defendant failed to investigate the report of sexual harassment.[93] Whether Assad's conduct was pervasive, whether Ms. Thompson reported Assad's conduct to her supervisors, and whether Defendant knew or should have known of the harassment are material factual disputes precluding summary judgment in Defendant's favor on Plaintiff's claim of hostile work environment.

Defendant argues that it may use the *Faragher/Ellerth* affirmative defense,[94] under which the Supreme Court held an employer has an affirmative defense to a hostile work environment sexual harassment claims if (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[95] Because there are factual disputes as to whether Defendant took reasonable care to prevent sexual harassment and whether and when Plaintiff and Ms. Thompson reported the harassment, Defendant is not entitled to summary judgment based on this defense.

## IV.   Retaliation

A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination under Title VII.[96] "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."[97] If a plaintiff presents direct evidence, the *McDonnell Douglas* test does

---

[93] R. Doc. 67-2 at 42, ¶ 15.

[94] R. Doc. 52-2 at 17; *see Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998).

[95] *McDaniel v. Shell Oil Co.*, 350 Fed. Appx. 924, 926 (5th Cir. 2009) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

[96] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (1983).

[97] *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (1993).

not apply.[98] More often, a plaintiff relies on circumstantial evidence, which requires the court to apply the *Mcdonnell Douglas* burden-shifting analysis.[99] Under the *McDonnell Douglas* test, the plaintiff must first demonstrate a prima facie case of discrimination.[100] If successful, the burden of production shifts to the defendant to show a legitimate and nondiscriminatory basis for the adverse employment decisions.[101] Finally, the plaintiff must then show the defendant's proffered reason is pretextual or unworthy of belief.[102]

In order to determine which analysis to apply, the Court first looks to whether there is direct evidence of intentional discrimination. In this case, Plaintiff has not produced any evidence that, on its face, shows Defendant acted in a discriminatory way. "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face."[103] In the absence of direct evidence showing Defendant's alleged discriminatory motive, Plaintiff relies on circumstantial evidence, and therefore must first establish a prima facie case of retaliation.[104]

Plaintiff alleges she was retaliated against for reporting one instance of sexual harassment.[105] Title VII prohibits an employer from taking adverse employment action against an employee because she engages in a protected activity.[106] To establish a prima facie case of retaliation, a plaintiff must show that: (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against

---

[98] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)

[99] *Smith v. Touro Infirmary,* 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).

[100] *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5t h Cir. 1994) (applying *McDonnell Douglas* test).

[101] *Id.*

[102] *Id.*

[103] *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994).

[104] *See Smith v. Touro Infirmary,* 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015).

[105] R. Doc. 1-1 at ¶ 51.

[106] *Joseph v. Phillips,* 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014).

her; and (3) a causal connection exists between the protected activity and the adverse action.[107]

If the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.[108] If the employer does so, the burden shifts back to the plaintiff to prove the employer's given reasons are a pretext for retaliation.[109] The plaintiff establishes pretext by showing the adverse action would not have occurred "but for" the employer's retaliatory motive.[110] At the pretext stage, the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar* requires more than mere temporal proximity.[111] To avoid summary judgment, a plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.[112]

In this case, Plaintiff reported one instance of sexual assault and filed an EEOC charge. An employee engages in a protected activity if she opposes any unlawful employment practice, or makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under Title VII.[113] Plaintiff engaged in a protected activity by complaining of sexual harassment and making an EEOC filing.

Plaintiff alleges adverse employment action was taken against her through changes in her scheduling and her eventual termination.[114] "An adverse employment action is one that 'a reasonable employee would have found … [to be] materially adverse,' which in this

---

[107] *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)).
[108] *Id.* (quoting *LeMaire v. Louisian*a, 480 F.3d 383, 388-89 (5th Cir. 2007)).
[109] *Id.*
[110] *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517 (2013)).
[111] *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2533 (2013).
[112] *Hague v. Univ. of Tex. Health Sci. Ctr. At San Antonio*, 560 Fed. Appx. 328, 333 (5th Cir. 2014) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted))
[113] 42 U.S.C § 2000e-3(a).
[114] R. Doc. 1-1 at ¶ 30-31.

context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[115] In this case, Plaintiff's alleged termination of employment is materially adverse, because termination would likely dissuade a reasonable worker from reporting sexual harassment.

A causal link between the adverse employment action and the protected activity can be satisfied "simply by showing close enough timing between [the] protected activity and [the] adverse employment action."[116] *Nassar*'s heightened but-for causation requirement applies only in the pretext stage of the *McDonnell Douglas* analysis and is not a required element of a prima facie case.[117] "At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action."[118] In *Garcia v. Professional Contract Services, Incorporated*, the Fifth Circuit held that two and a half months between the protected activity and adverse employment action was close enough.[119] In this case, Plaintiff alleges she was subject to an incident of sexual harassment on June 5, 2018.[120] In her response to the Defendant's statement of undisputed material facts, Plaintiff states she reported the incident to Ms. Herbert on June 11, 2018,[121] and Assad was terminated on June 12, 2008.[122] Plaintiff alleges her employment was terminated on July 9, 2018.[123] Less than a month passed between Plaintiff reporting the incident of

---

[115] *Hernandez v. Yellow Transp. Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008)).
[116] *Abbood v. Texas Health and Human Services Comm.*, 783 Fed. Appx. 459 (5th Cir. 2019) (citing *Garcia v. Professional Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)).
[117] *Garcia v. Professional Contract Services, Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).
[118] *Id.*
[119] *Id.*
[120] R. Doc. 1-1 at ¶ 14.
[121] R. Doc. 67-1 at ¶ 12.
[122] R. Doc. 1-1 at ¶ 20.
[123] *Id.* at ¶ 30.

sexual assault and Plaintiff's alleged firing. Further, Plaintiff alleges scheduling changes and harsh behavior from supervisors began shortly after she reported the incidence of sexual assault.[124] The proximity between the Plaintiff's report of sexual harassment, changes to her schedule, and her alleged termination establish the causal element of a prima facie case of retaliation.

Because Plaintiff established a prima facie case, the burden shifts to the employer. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[125] The defendant must articulate a legitimate, nondiscriminatory, or nonretaliatory reason for its employment action.[126] In this case, Defendant articulates Plaintiff's schedule changes were based on neutral factors, such as lack of manpower, an effort to meet the client's needs, and the importance of all guards being familiar with all posts.[127] Defendant represents there was a lack of manpower which necessitated schedule changes because an officer quit during that week.[128] In regard to Plaintiff's termination, Defendant represents Plaintiff was not terminated, but instead, she quit.[129] Defendant further notes that, even if Defendant had terminated Plaintiff's employment, Plaintiff's failure to work her shift July 5th, 7th, and 8th, in addition to Plaintiff's allegedly aggressive behavior in her July 9th meeting with Ms. Herbert and Mr. Labeaud (shift supervisor), are legitimate non-retaliatory reasons for its employment action.[130] Defendant articulated neutral reasons for employment actions taken against Plaintiff and accordingly met its burden of production.

---

[124] *Id.* at ¶ 22.
[125] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[126] *Id.*
[127] R. Doc. 52-2 at 23.
[128] R. Doc. 52-3.
[129] *Id.*
[130] R. Doc. 69 at 4-5.

"[O]nce the employer offers a legitimate, nondiscriminatory reason ... the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."[131] To survive summary judgment, Plaintiff "must show a conflict in substantial evidence" on the question of whether Defendant would not have terminated her employment "but for" the protected activity.[132] In *Wallace v. Seton Family Hospitals*, the Fifth Circuit held an employer's shifting explanations for firing plaintiff, the suspicious temporal proximity between plaintiff's protected activity and termination, as well as evidence plaintiff was disciplined differently from other employees, was sufficient evidence of pretext.[133]

In this case, Plaintiff has shown "a conflict in substantial evidence" on multiple issues that may lead a jury to believe the Defendant's motive was retaliation. First, in regard to changes to Plaintiff's work schedule, Defendant asserts guards are moved around posts and their schedules at each post vary.[134] Plaintiff disputes this, stating that the schedules at various posts varied slightly from week to week, but the weekly schedules tended to be similar.[135] Second, there is a dispute as to whether the schedule emailed on June 16 was intended to be the schedule for the rest of the year.[136] Defendant states guard schedules are issued one week in advance but schedules can change at any time.[137] Plaintiff argues this is normally true, but offers an email received by all guards on June 16, 2018 stating the schedule attached would be the schedule for the remainder of the

---

[131] *McCoy v. Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).
[132] *Abbood v. Texas Health and Human Services Comm*., 783 Fed. Appx. 459, 463 (5th Cir. 2019) (citing *Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotations omitted)).
[133] *Wallace v. Seton Family of Hosps.*, 777 F. Appx. 83, 93 (5th Cir. 2019).
[134] R. Doc. 52-1 at ¶ 3.
[135] R. Doc. 67-1 at ¶ 3.
[136] R. Doc. 52-1 at ¶ 6; R. Doc. 67-1 at ¶ 6.
[137] R. Doc. 52-1 at ¶ 6.

year.[138] Third, it is disputed whether Plaintiff worked three overnight shifts two weeks after the incident of sexual harassment.[139] Defendant states Plaintiff worked three overnight shifts following the incident, while Plaintiff denied in her deposition working the overnight shifts Defendant attributed to her.[140] Fourth, it is disputed whether Plaintiff quit or was terminated. Plaintiff argues that her employment was terminated,[141] while Defendant maintains Plaintiff quit.[142]

Finally, it is disputed whether lack of manpower was the reason for not accepting Plaintiff's call-offs. Defendant offers Ms. Herbert's deposition in which Ms. Herbert testified that someone quit or was terminated the week of July 4, 2018, causing Defendant to be short-staffed and resulting in a lack of man power.[143] Plaintiff argues that Ms. Herbert in her deposition testified she believed Defendant was fully staffed. Additionally, Plaintiff provided a chart of guards employed between March 1, 2018, to July 31, 2018 to show that a sufficient number of guards were employed during the time Defendant claims the company was suffering a lack of manpower.[144]

On all the above issues, Plaintiff has shown a conflict in substantial evidence. Further, if Plaintiff's position is proven, it is possible a jury may infer retaliation was the real motive for Plaintiff's alleged schedule changes and her termination. Accordingly, Defendant's motion for summary judgment is denied on Plaintiff's claim of retaliation under Title VII.

---

[138] R. Doc. 67-1 at ¶ 6; R. Doc. 67-7 at 93.
[139] R. Doc. 52-1 at ¶ 14; R. Doc. 67-1 at ¶ 14.
[140] R. Doc. 52-1 at ¶ 14; R. Doc. 67-1 at ¶ 14.
[141] R. Doc. 1-1 at ¶ 30.
[142] R. Doc. 52-2 at 6-7.
[143] R. Doc. 69 at 3; R. Doc. 52-3 at 23.
[144] R. Doc. 67 at 17; R. Doc. 67-5 at 20.

## <u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment filed by Defendant Culpepper and Associates Security Services, Inc, be and hereby is **GRANTED IN PART AND DENIED IN PART**.

Summary judgment is **DENIED** with respect to Plaintiff's Title VII claim based on retaliation and her Title VII claims based on sexual harassment and hostile work environment.

Summary judgment is **GRANTED** in favor of Defendant against Plaintiff with respect to Plaintiff's ADA claim for failure to exhaust.

**New Orleans, Louisiana, this 28th day of August, 2020.**

_____
            **SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**