UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NIGIL DOWDELL,** | DOCKET NO. 2:19-cv-11410-SM-KWR |
| Plaintiff, | |
| v. | JUDGE SUSIE MORGAN |
| **CULPEPPER & ASSOCIATES SECURITY SERVICES, INC.,** | MAG JUDGE KAREN WELLS ROBY |
| Defendant. | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY FEES AND EXPERT WITNESS FEES

#### I. INTRODUCTION

On November 17, 2020, Judge Susie Morgan issued Findings of Fact and Conclusions of Law following a three-day bench trial of Plaintiff Nigil Dowdell's sexual harassment hostile work environment and retaliation claims under Title VII. R. Doc. 136 (hereinafter "the Trial Decision"). The Court awarded Ms. Dowdell $72,733.73 in back pay and $25,000 as compensatory damages for emotional distress and loss of enjoyment of life, and awarded Plaintiff prejudgment and post-judgment interest. *Id.* at 37-38. The Court also ruled that Plaintiff was entitled to an award of her attorney fees and expert witness fees, and instructed Plaintiff to file a fees motion with this Court no later than December 8, 2020. *Id.* at 42-44. This memorandum is filed in support of Plaintiff's Motion for an Award of Attorney Fees and Expert Witness Fees.

The 44-page Trial Decision was a complete vindication of Ms. Dowdell's claims of sexual harassment hostile work environment and retaliation arising out of a co-worker's sexual assault of her while she was working as a security guard at the Veterans Affairs Hospital in New Orleans

("VA"). In almost every instance where Defendant disputed the evidence that Ms. Dowdell presented at trial, the Court found facts in favor of Plaintiff. *See* R. Doc. 136.

Defendant was successful in an entirely different and less laudatory way. Defendant managed to turn a fairly straightforward Title VII retaliation and sexual harassment hostile work environment claim into a much more complicated and drawn-out proceeding. CASS failed to provide answers in discovery and in depositions, answers which were in its possession and which Plaintiff had to expend time and resources unearthing. Defendant filed a 35-page Motion for Summary Judgment with 166 pages of exhibits. (R. Doc. 52), which the Court denied in large part.[1]

Ms. Dowdell made a settlement demand on April 21, 2019. On June 10, 2020, Defendant made a very low settlement offer that was rejected by Plaintiff. During the settlement conference on August 20, 2020, CASS failed to make *any* settlement offer, even though it had already received Ms. Dowdell's opposition to the motion for summary judgment, an opposition which laid out in detail the exact facts that she would later present at trial. *Compare* Declaration of Nigil Dowdell to the Trial Decision.

CASS's strategy was to treat litigation as a shell game to avoid accountability and to pressure Ms. Dowdell, without regard for how that strategy would impact any later fee award assessed against it. As will be demonstrated, the hourly rates charged by Plaintiff's counsel are within prevailing market rates, the hours expended in the litigation following counsel's reductions in the exercise of billing judgment were reasonable, and the amount invoiced for Plaintiff's damage

---

[1] The Court granted Defendant's summary judgment on Plaintiff's ADA claim, a claim for which Plaintiff sought no damages separate from those she sought under Title VII.

expert was also reasonable. Plaintiff respectfully requests entry of an attorney fee and expert fee award in the amount of $_____.[2]

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A. The Proceedings Prior to Trial.**

The details concerning pre-trial proceedings are contained in Susanne Cooper's declaration, as well as in the Docket Report attached as Exhibit 10. The following is a list of a few of those events.

On <u>June 28, 2019</u>, this matter was removed to the United States District Court for the Eastern District of Louisiana.

On <u>November 6, 2019</u>, Plaintiff served its First Set of Interrogatories and Requests for Production of Documents on Defendant on November 6, 2019, requesting, among other things,

    a. all work schedules for the VA hospital location from March 1, 2018 until July 15, 2018, including all versions and revision of Plaintiff's work schedules,
    b. all emails and text messages from Robert Body, Freda Herbert, Christopher Culpepper and Ules LaBeaud that relate in any way to Plaintiff;
    c. a copy of the harasser's, Ahmad Mubarak-Assad's, personnel file, including but not limited to all discipline, writ-ups, warnings, and complaints made against him and all documents pertaining to investigations of complaints made against the harasser during his employment with Defendant,

all documents pertaining to employees who were terminated for "no-call/no-show." ((Declaration of Susanne Cooper at ¶23)

On <u>December 20, 2019,</u> the parties attended the first status conference with the Honorable Judge Susie Morgan. (Docket No. 19). After hearing very brief statements by both

---

[2] Plaintiff will supplement this amount with attorney time devoted to the present motion.

counsel, Honorable Judge Susie Morgan recommended to settle the case. (Declaration of Susanne Cooper at ¶46)

On January 9, 2020, counsel for Plaintiff emailed a detailed nine-page letter to defense counsel addressing the insufficiencies in the Defendant's discovery responses in an effort to obtain relevant and reasonable discovery responses. (Docket No. 35.2, Declaration of Susanne Cooper at ¶25).

On January 15, 2020, a discovery conference was conducted resolve discovery issues and to prevent a motion to compel. Nevertheless, Defendant barely supplemented its production and continued to insist that all relevant and responsive email correspondence was produced. (Declaration of Susanne Cooper at ¶26).

On February 3, 2020, Plaintiff propounded a second set of discovery requests on Defendant requesting, among other information and documents, copies of all write ups and termination letters issued to Defendant's former and current employees for calling off and/or no-call/no-shows, as well as documents concerning the investigation of plaintiff's sexual harassment complaint. Defendant responded that no such information existed. (Declaration of Susanne Cooper at ¶27).

On February 19, 2020, March 10 (the evening before the deposition of Defendant's local managers, Freda Herbert and Ules LaBeaud), March 11, and on March 12, 2020, Defendant supplemented its discovery responses and document production but still did not produce any records of other employees who called off or violated the attendance policy, as Defendant alleged Plaintiff did, and denied that any previous complaints were made against the sexual harasser. (Declaration of Susanne Cooper at ¶28-29).

On <u>April 8, 2020</u>, a second discovery conference was initiated by counsel for Plaintiff to demand the email communications between management concerning the scheduling referenced in Ms. Herbert's deposition as well as the logs for call-offs and no call no shows that Ms. Herbert kept. (Declaration of Susanne Cooper at ¶31).

On <u>May 26, 2020</u>, after numerous emails, letters and phone calls, counsel for Plaintiff filed a motion to compel concerning the comparator information and records regarding previous complaints against the harasser, which was granted in part and denied in part. (Docket No. 35, 45).

On <u>June 16, 2020</u>, after discovering several key witnesses, Plaintiff filed a Motion for Leave to Amend her witness list, which was opposed by Defendant. After a telephone status conference before the Honorable Judge Susie Morgan, Plaintiff's motion was granted. (Docket No. 49)

On <u>July 21, 2020</u>, Defendant filed a Motion for Summary Judgment (Docket No. 52), which Plaintiff opposed (Docket No. 59)

On <u>August 4, 2020</u>, counsel for Defendant filed a Motion *in Limine* to Exclude Evidence and Witnesses (Docket 56)

On <u>August 11, 2020</u>, counsel for Defendant filed a Motion to Strike the response Memorandum filed by Plaintiff in opposition to Defendant's Motion for Summary Judgment (Docket No. 63).

On <u>August 28, 2020</u>, the Honorable Judge Susie Morgan granted Defendant's Motion for Summary Judgment concerning Plaintiff's ADA cause of action but denied the Motion for Summary Judgment concerning Plaintiff's sexual harassment/hostile work environment claim and retaliation claim (Docket No. 88)

On <u>September 21, 22, and 23, 2020</u>, a bench trial via zoom was held before the Honorable Judge Susie Morgan addressing Plaintiff's sexual harassment/hostile work environment claim and retaliation claim.

On <u>November 17, 2020</u>, the Honorable Judge Susie Morgan rendered Findings of Facts and Conclusions of Law in Plaintiff's favor on both counts, awarding Plaintiff $ 25,000.00 in compensatory damages, $72,733.73 in backpay plus pre-judgment and post-judgment interest, as well as attorney's fees and expert witness fees. (Docket No. 136.)

On <u>November 18, 2020</u>, Judgment was entered in favor of Nigil Dowdell and against Culpepper Associates Securities Services, Inc. (Docket No. 137).

Despite being asked in discovery for the names of any other complaints against Ms. Dowdell's abuser, CASS failed to name two other complainants or to produce any documents concerning their complaints. Plaintiff discovered the name of one of the complainants and she became a key trial witness.

Counsel for Defendant increased Plaintiff's attorney fees by opposing Plaintiff's Motion to Amend her Witness list despite the fact that all witnesses that Plaintiff discovered late were former and current employees of Defendant and well known and accessible to Defendant.

Defendant never made a good faith settlement offer prior to trial. On August 20, 2020, Magistrate Roby conducted a settlement conference but counsel for Defendant decided not to make any settlement offer.

**B. Defendant's Litigation Strategy Substantially Increased the Amount of Plaintiff's Attorney Fees**.

Plaintiff's counsel Susanne Cooper described the difficulty litigating against Defendant as follows:

> This case was the most adversarial case that I have ever been a part of in my 17 years as an employment litigator. In particular, the discovery of evidence was made extremely difficult and time consuming by an uncooperative Defendant. This necessitated a large amount of attorney hours spent on requesting, compelling, sorting and piecing together the evidence of this case. Additionally, Plaintiff was forced to file several motions that could have been avoided had counsel for defense taken a more cooperative approach to this litigation. Furthermore, Plaintiff was forced to defend against many motions filed unsuccessfully by defense counsel. Plaintiff prevailed on all Motions she filed or opposed at least in part.

Cooper Decl. at ¶ 22. *See generally id.* (discussing in detail the problems Plaintiff faced trying to obtain discovery from Defendant).

One example of Defendant's shell-game tactics was the responses it provided concerning the reasons for terminating Ms. Dowdell. As indicated in the Trial Decision, Defendant's witnesses (including CASS's CEO) all contradicted each other *at trial* concerning that key element of Plaintiff's retaliation claim:

> Herbert, LaBeaud, and Culpepper *gave inconsistent and incredible testimony regarding Plaintiff's altered working conditions* as to time and location. Plaintiff has proven the reasons given by CASS for its actions were pretextual and retaliation was the real motive for Plaintiff's schedule and duty post changes and her termination. These changes would not have occurred but for CASS' retaliatory motive. Accordingly, Plaintiff has proven she was retaliated against in violation of Title VII.

R. Doc. 136 at 35 (emphasis added). Two of CASS's witnesses were deposed, and their trial testimony differed from what they stated in their depositions. Plaintiff consistently argued and persistently sought to prove that CASS's basis for firing Ms. Dowdell was pretextual, yet CASS denied that key element all the way through trial. As Ms. Cooper indicated, this kind of conduct made Ms. Dowdell's lawsuit much for difficult and time-consuming.

### III.    LEGAL ARGUMENT

In the Fifth Circuit, courts apply a two-step process for determining reasonable attorney fees, beginning with calculating the "lodestar." *Combs v. City of Huntington*, 829 F.3d 388, 391-92 (5th Cir. 2016) (citation omitted). This Court must determine the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Plaintiff has the burden of documenting and demonstrating the reasonableness of both counsel's hourly rates and the time submitted for the fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

"After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended `by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections." *Who Dat Yat Chat,* 838 F. Supp. 2d at 519 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

There is a strong presumption that the lodestar is reasonable, but once the lodestar is determined, the Court should then consider the various factors identified in *Johnson*, 488 F.2d at 717-19, if ether party seeks to adjust the lodestar upward or downward. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010), and *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). *See also Watkins v. Forcide*, 7 F.3d 453, 457 (5th Cir. 1993).

As the fee applicants, Plaintiffs "bear[] the burden of showing that `such an adjustment is necessary to the determination of a reasonable fee.'" *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (emphasis in original). The lodestar, however, "may not be adjusted due to a *Johnson* factor that

was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 799).

    A. **Plaintiff's Lodestar Amount is $268,996.50.**

| Name | Number of hours | Hourly Rate | Fees |
|---|---|---|---|
| Amanda Butler | 349.54 hours | $350.00 | $112,376.50 fees |
| Susanne Cooper | 491.3 hours | $300.00 | $138,430 fees |
| Megan Kelley | 62.55 hours | $200.00 | $10,560 fees |
| Total | 903.39 hours | | $268,006.50 |

*Commented [SC1]:*

    1. **Plaintiff's Counsel's Hourly Rates are within Prevailing Market Rates**.

Reasonable hourly rates are to be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). If the hourly rate is the attorney's customary rate and within the range of prevailing market rates, then the rate is *prima facie* reasonable if uncontested. *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990) (quoting *Islamic Ctr. of Mississippi v. City of Starkville*, 876 F.2d 468, 469 (5th Cir. 1989)). *See also La. Power & Light*, 50 F.3d at 328.

In a case from the Western District of Louisiana, the court identified the preferred evidence for evaluating the reasonableness of hourly rates in an attorney fees motion:

> Typically, parties seeking to recover reasonable attorney fees submit the affidavit(s) of the attorneys who represented the prevailing party, describing the experience of the involved attorneys, verifying the submitted billing entries, and producing satisfactory evidence of prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, and, if available, actual rates paid in similar lawsuits. The "relevant community" for the purpose of awarding attorney fees is the judicial district in which the litigation occurred, in this case the Western District of Louisiana.

*Latiolais v. Griffith*, Civil Action No. 09-18, 2015 U.S. Dist. LEXIS 91397 (W.D. La. June 23, 2015).

Plaintiff has submitted the declarations of the three main attorneys who worked on this matter, in which they each describe their experience, verify the submitted billing entries, and justify the hourly rates charged in this lawsuit. *See* Declaration of Amanda Butler (Exhibit __), Declaration of Susanne Cooper (Exhibit _), and Declaration of Kevin Vogeltanz (Exhibit __). Each attorney has indicated that the rates they have charged in this contingent fee case are the same as rates charged to paying clients. *See, e.g.,* Butler Decl. at ¶¶12-13; Cooper Decl. at ¶¶16-17; Vogeltanz Decl at ¶¶11-12.  "The established rates represent the opportunity cost of what the firm turned away in order to take the litigation." Laffey, 746 F.2d at 24. " *Louisiana Power Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

Because "the rates charged in private representations may afford relevant comparisons,"[3] Plaintiff has submitted the declarations of two employment law practitioners and one law professor at the Loyola College of Law, opining that the hourly rates charged by counsel here are reasonable and within the range of prevailing market rates. *See* Declaration of Luz Molina (Exhibit __) at ¶¶6-8; Declaration of Kerry Murphy (Exhibit __) at ¶¶ 16-19; Declaration of Casey Denson (Exhibit __) ¶¶13-15. For example, Professor Molina stated:

The following chart identifies the hourly rates of the attorneys who billed in this matter, as well as citations to the evidence supporting a finding of reasonableness.

| Attorney | Years of Practice | Hourly Rate | Evidence |
|---|---|---|---|
| Amanda Butler | 12 years | $350 | Butler Decl. at ¶12<br>Molina Decl. at ¶6<br>Murphy Decl. at ¶16<br>Denson Decl. at ¶13 |
| Susanne Cooper | 17 years | $300 | Cooper Decl. at ¶17<br>Molina Decl. at ¶7 |

---

[3] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

|  |  |  |  |
|---|---|---|---|
|  |  |  | Murphy Decl. at ¶17<br>Denson Decl. at ¶14 |
| Kevin Vogeltanz | 11 years | $300 | Vogeltanz Decl. at ¶12<br>Cooper Decl. at ¶19<br>Murphy Decl. at ¶19 |
| Megan Kelley | 4 Years | $200 | Butler Decl. at ¶19<br>Molina Decl. at ¶8<br>Murphy Decl. at ¶18<br>Denson Decl. at ¶15 |

This Court has determined in numerous attorney fee cases that hourly rates in the range of between $300 and $350 were reasonable for attorneys with the same level of experience as Ms. Butler, Ms. Cooper, and Mr. Vogeltanz.[4] For example, in a Title VII case where the defendant was awarded attorney fees because the plaintiff's case was deemed frivolous, this Court held that an hourly rate of $265 per hour in 2014 (**adjusted to $295 for 2020**) was reasonable for three attorneys with 30-, 11-, and 10-years' experience. *See Matherne v. Ruba Management,* No. 12-2461, 2014 U.S. Dist. LEXIS 151900 (E.D. La. October 24, 2014). "Having reviewed the most recent case law in this district, the Court finds that $265.00/hour is on par with— and perhaps even a tad lower than — the average fees for partners in this district." *Id.* at *6 (citations omitted). *See, e.g., EnVen Energy Ventures, LLC v. Black Elk Energy Offshore Operations, LLC,* No. 14-424, 2015 WL 3505099, at *2 (E.D. La. June 2, 2015) (awarding $300 per hour for an attorney with 10 years of experience and $275 per hour for an attorney with 7 years of experience as well as collecting cases showing hourly rates of $275 for seven years of experience, **adjusted to $333 and $306 for 2020**); *Ranger Steel Servs, LP v. Orleans Materials & Equip,* 2010 WL 3488236 (E.D.

---

[4] Attached as Exhibit 7 is a chart of the inflation-adjusted hourly rates for decisions rendered within the last 12 years, using the calculator found at https://smartasset.com/investing/inflation-calculator#6w8y4CHu4d Thus, for example, a $275 hourly rate in 2012, adjusted for inflation, would be the same as a $315 hourly rate today. Ex. --. Where appropriate, the inflation-adjusted rate is included in the parenthetical for the hourly-rate cases cited by Plaintiff.

La. Aug. 27, 2010) (Barbier, J) (finding $360 for 2009 charges and $395 for 2010 charges to be reasonable local rates, **adjusted to $435  and $477 for 2020**); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 701-02 (E.D. La. 2009) (Vance, J.) (finding hourly billing rates of $300 for partners, $225 for associates, and $75 for paralegals to be reasonable in a case brought under the Fair Labor Standards Act, **adjusted to $368  and $276 for 2020**); *Cox v. Precision Surveillance Org.*, Civ. A. No. 13-6600, 2014 U.S. Dist. LEXIS 61956, 2014 WL 1785350, at *1 (E.D. La. May 5, 2014) (awarding fees for an hourly rate of $275 for an attorney with ten years of experience, **adjusted to $306 for 2020**); Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C. , Civ. A. No. 10-4151, 2014 U.S. Dist. LEXIS 135253, 2014 WL 5039670 (E.D. La. Sept. 25, 2014) (awarding $275.00 per hour for attorneys with seven years of experience **adjusted to $306 for 2020**); *DirecTV, LLC v. Ertem*, No. CIV.A. 13-487, 2015 WL 459398, at *3 (E.D. La. Feb. 3, 2015) (finding hourly rates of $350/hour for partners and $250/hour for associates reasonable, **adjusted to $398 and $278 for 2020**).

In addition, this Court has found $200 per hour to be a reasonable rate for an attorney who has been practicing for four years. *See, e.g., Alexander v. Ace Am. Ins. Co.*, No. 14-310, 2014 WL 4163756, at *2 (E.D. La. Aug. 20, 2014) (awarding $200 per hour for attorney with four years of experience, **adjusted to $223 for 2020**); *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.* , Civ. A. No. 10-4151, 2014 U.S. Dist. LEXIS 135253, 2014 WL 5039670 (E.D. La. Sept. 25, 2014) (awarding $225.00/hour to attorneys with four years of experience, **adjusted to $223 2020**); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 701-02 (E.D. La. 2009) (Vance, J.) (finding hourly billing rates of $225 for associates to be reasonable in a case brought under the Fair Labor Standards Act, **adjusted to $250 for 2020**).

Finally, this Court has approved a paralegal rate of at least $100 per hour as reasonable. *See, e.g., Loiacano v. DISA Glob. Sols.*, No. CV 14-1750, 2016 WL 2926679, at *2 (E.D. La. May 19, 2016) (awarding $150/hour for paralegal's work, **adjusted to $165 for 2020**).

2. **The Hours Submitted in this Fee Application are Reasonable and Have Been Subjected to Counsel's Billing Judgment.**

Pursuant to Local Rule 54.2, Plaintiff's counsel has attached a copy of the contemporaneous billing records for this case which include the dates, amount of time billed, and a description of the services performed. *See* Butler Decl. & Exhibit 8 (invoice).

Before submitting time records in support of an attorney fees award, "[t]he [fee] applicant should exercise `billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (citations omitted). *See also Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)) ("party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting 'adequate documentation of the hours reasonably expended' and demonstrating the use of billing judgement.").

Plaintiff's counsel has reviewed the time entries for the litigation team and deducted an amount totaling $25,269.00. *See Exhibit 1,* Butler Decl. at ¶ 24. These deductions include entries that would not be billed to the client (e.g., duplicate entries) and time entries that are not

recoverable in an award to a prevailing party (e.g., time spent on unsuccessful claims).[5] *See generally* Butler Decl. at ¶23 (discussing categories of time entries that were deducted) & Ex. 8 (invoice showing the deductions and basis for those deductions). Counsel has ensured that the time entries reflect the general subject matter of the work performed. *Hensley,* 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). In addition, Plaintiff's counsel has deducted any duplicate work performed in a case where there were multiple attorneys who performed worked for Ms. Dowdell. *See Jolie Design & Décor, Inc. v. Gogh*, 2016 WL 4708210 (E.D. La. Aug. 11, 2016) (citing *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996)) ("[W]hile a party is free to employ multiple attorneys, that party's opponent is not required to pay for duplicative work by those attorneys — it remains the burden of the party seeking fees to demonstrate the reasonableness of all the fees it seeks.").

Several factors made this litigation time consuming. For example, Defendant filed many unsuccessful motions that Plaintiff had to defense against. Including the Motion for Summary Judgement (Docket No. 52), Motion to Strike (Docket No. 63) and Motion in Limine (Docket No. 56). See Ex. 2 paragraphs 38-45.

Furthermore, Defendant's refusal to negotiate an earlier settlement forced Plaintiff to litigate this case all the way through trial. Despite numerous attempts by Plaintiff to settle the case and preserve judicial resources, counsel for Defendant chose not to engage in reasonable

---

[5] *See Hensley*, 461 U.S. at 434-35 (work on unsuccessful claim not compensable in attorney fees award). Where counsel has not been able to divide work for successful claims from unsuccessful claims, those time entries remain in the invoice. *Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1169 (5th Cir. 1991) ("[W]here time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."), *cert. denied*, 504 U.S. 911 (1992).

settlement negotiations until after the trial, forcing Plaintiff's counsel to spend a large number of hours to litigate this case through trial. (Susanne Cooper's Declaration at ¶ 50)

In particular, Judge Morgan recommended settlement of this matter since the first status conference on December 20, 2019 and throughout the entire litigation. Nevertheless, counsel for Defendant refused to even engage in settlement negotiations at all until she took Plaintiff's deposition on May 28, 2020, 11 months into the litigation. (Susanne Cooper's Declaration at ¶ 46)

Contrary to Judge's Morgan's recommendation, counsel for Defendant then explained that they would not engage in settlement negotiations until they filed a Motion for Summary Judgment, which was questioned by the Honorable Judge Susie Morgan during a status conference. (Susanne Cooper's Declaration at ¶ 47)

Finally, on June 10, 2020, one year into the litigation, and after Plaintiff's counsel already spent a significant number of hours dealing with discovery issues and drafting an opposition to Defendant's Motion for Summary Judgment, counsel for Defendant finally made a settlement offer of in the law four digits, which was declined by counsel for the Plaintiff. (Susanne Cooper's Declaration at ¶ 48)

On August 20, 2020, Magistrate Roby conducted a settlement conference but counsel for Defendant decided not to make a settlement offer at all. (Susanne Cooper's Declaration at ¶ 49)

After the settlement conference and before the trial, counsel for Plaintiff made numerous attempts to restart the settlement negotiations and lowered her settlement demand but counsel for defendant did not increase the initial settlement offer until the conclusion of the first day of trial. (Susanne Cooper's Declaration at ¶ 50).

**Expert Witness Fees:**

Plaintiff hired economic expert, Dr. Randolph Rice. He rendered an initial expert report on April 2, 2020, for which he charged $1,200.00. Due to the continuation of the trial date, an updated expert report was necessary, for which Plaintiff paid $900.00. Exhibit 9 and Ex. 1 at para. 25.

For the reasons set forth in the memorandum, Plaintiff respectfully requests an award of attorneys' fees in the amount of $268,996.50 as well as the expert witness fees in the amount of $2,100.00.

Respectfully submitted,

_/s/ Amanda Butler_
Amanda J. Butler (T.A.) (LSBA # 31644)
abutler@lawgroup.biz
Susanne Cooper (LSBA #27361)
scooper@lawgroup.biz
700 Camp St., Ste. 405
New Orleans, LA  70130
Telephone: (504) 528-9500
Facsimile: (504) 754-7776
Kevin Vogeltanz (LSBA #32746)
volgeltanz@gmail.com
823 Carroll St Ste A
Mandeville LA, 70448
Phone: (504) 275-5149
Fax: (504) 910-1704

**COUNSEL FOR PLAINTIFF,**

**NIGIL DOWDELL**

**CERTIFICATE OF SERVICE**

    I hereby certify on the 8th day of December 2020, a copy of the above and foregoing has been served upon counsel for all parties by electronically filing it with the Clerk of Court using the CM/ECF system.

                                            /s/ *Amanda Butler*
                                            Amanda Butler